DEGEORGE v WARHEIT

Docket No. 267787. Submitted August 7, 2007, at Detroit. Decided September 11, 2007, at 9:00 a.m.

Bob DeGeorge brought a breach of contract action in the Oakland Circuit Court against Phil Warheit and Jerome Silver after they voted to end DeGeorge's partnership in the business they operated. After a jury found in favor of the defendants, the court, Steven N. Andrews, J., entered an order declaring the plaintiff's lawsuit frivolous and ordering the plaintiff's attorney, Gregory J. Rohl, to pay over $200,000 in costs and attorney fees in addition to the judgment entered against the plaintiff. The court also entered an order restricting Rohl from transferring his personal assets, after which Rohl declared bankruptcy. Warheit later filed a motion for Rohl's incarceration for criminal contempt, alleging that Rohl had improperly transferred assets in violation of this order, and, after a hearing, the court sentenced Rohl to 30 days in jail. Rohl appealed.

The Court of Appeals *held*:

1. Rohl was not denied due process of law in the criminal contempt proceeding. As Rohl's own filings indicate, he was aware that Warheit had moved to charge him with criminal contempt, and he had adequate time to prepare a defense. The fact that Rohl did not avail himself of the opportunity to call witnesses on his behalf does not indicate a violation of his due process rights. Rohl's allegation that the trial court improperly shifted the burden of proof to him is unsupported.

2. Rohl's unsupported argument that there was no evidence demonstrating criminal contempt beyond a reasonable doubt is belied by his own arguments at the contempt hearing, which adequately establish that he violated the court's order.

3. The trial court did not err in relying on the factual findings of the federal court in Rohl's bankruptcy proceeding to justify its decision to hold Rohl in contempt.

4. The trial court's order declaring Rohl to be in criminal contempt did not violate the constitutional provision prohibiting

imprisonment for inability to pay a debt because the order was based on Rohl's failure to comply with the court's order regarding monetary sanctions.

5. Criminal contempt proceedings may be brought by a private party rather than a prosecutor.

Affirmed.

1. CONTEMPT — CRIMINAL CONTEMPT — FACTUAL FINDINGS.

A court may rely on the factual findings of another tribunal to support its decision to hold a person in criminal contempt.

2. CONTEMPT — CRIMINAL CONTEMPT — PRIVATE PARTIES.

Criminal contempt proceedings may be brought by a private party rather than a prosecutor (MCR 3.606).

*Law Offices of Gregory J. Rohl* (by *Gregory J. Rohl*) for Gregory J. Rohl.

*Bruce T. Leitman* for Phil Warheit and Jerome Silver.

Before: DAVIS, P.J., and SCHUETTE and BORRELLO, JJ.

PER CURIAM. The trial court issued an order holding appellant Gregory J. Rohl in criminal contempt of court and sentencing him to 30 days in jail. Rohl appeals the order as of right,[1] and we affirm.

### I. FACTS AND PROCEDURAL HISTORY

This case began as a breach of contract action arising out of a business relationship between plaintiff Bob DeGeorge and appellees Phil Warheit and Jerome Silver, who were partners in a land-clearing business.[2] At some point, plaintiff was forced out of the business. He thereafter filed a breach of contract action. At trial, plaintiff argued that his ouster was a violation of the

---

[1] The trial court permitted Rohl to post bond pending appeal, thereby delaying detention in jail.

[2] DeGeorge is now deceased and his estate is not a party to this appeal.

parties' business operating agreement. The jury disagreed, finding that plaintiff breached the operating agreement and that he was indebted to appellees in the amount of $24,000. The trial court entered an order calling plaintiff's lawsuit "frivolous from its inception" and ordering plaintiff and Rohl, who was plaintiff's attorney, to pay costs and attorney fees in the amount of $202,787.08, in addition to the $24,000 judgment entered against plaintiff.

On January 24, 2001, the trial court entered an order on stipulation of the parties generally restricting Rohl from transferring personal assets. That order provides as follows:

> It is hereby ordered that Gregory J. Rohl be precluded from transferring personal assets without approval of the Court except to the extent necessary to pay for household expenditures, car expenditures, child support and other fixed costs associated with daily living. Mr. Rohl will not transfer any stocks, bonds[,] real estate or any other holdings without prior approval of the Court or stay granted by the Court of Appeals.
>
> That this order will have no impact on Mr. Rohl's ability to operate and discharge his financial duties relating to Rohl Dillon, P.C.

On September 30, 2005, appellee Warheit filed a "motion to incarcerate Gregory J. Rohl for 30 days for criminal contempt and for order to show cause why he should not be held in further contempt." According to Warheit, Rohl had engaged in various improper transfers of assets in violation of the aforementioned order. Warheit attached to his motion the affidavit of Thomas H. Stidham and other documentary evidence, including an opinion and order related to Rohl's bankruptcy proceedings,[3] in which,

---

[3] Rohl apparently filed for bankruptcy in federal court one day after the trial court issued its January 24, 2001, order.

among other things, the bankruptcy judge refused Rohl's request to discharge Rohl's obligation to pay the judgment and sanctions imposed on him by the trial court in this case. The trial court entered an order compelling Rohl to appear before the court to show cause why he should not be held in contempt of court.

At the contempt hearing on December 7, 2005, Warheit alleged that Rohl had violated the trial court's January 24, 2001, order by, among other things, writing a personal check for a 60-day loan in the amount of $5,000 to an individual named Marco Chavez, paying off his credit card debt using personal funds, and purchasing a putting green and a pool table. Rohl argued that the $5,000 check did not violate the court's order because it was a loan. He also argued that certain expenditures, including a $10,000 check that he wrote to a "Mr. Bunting" and payment of his credit card debt, were ordinary household expenses. Regarding the putting green, Rohl contended that the putting green was purchased before the enforcement of the bankruptcy and was included as a household debt in the bankruptcy judgment. Rohl also argued that a transfer of his law firm's stock was "not a reduction in the overall value of the estate where it would violate [the court's] order" because the stock had "no marketability to the public" because the value of the stock was "nothing more than good will." Rohl contended that the other transfer of stock to his wife was a transfer of "worthless stock" that had "lost all of its value" over time, and Rohl claimed that he transferred it to his wife "to recoup the asset" as much as possible.

The trial court found Rohl in criminal contempt and sentenced him to 30 days in jail. In finding Rohl in contempt, the trial court cited the bankruptcy court's opinion, which stated that Rohl "intended to hinder,

delay and defraud Warheit and create a sham transaction to prevent Warheit from reaching Rohl's interest in his law firm through the appointment of a receiver." The trial court also ruled that Rohl violated the trial court's January 24, 2001, order by paying his personal debts without the court's approval.

## II. STANDARD OF REVIEW

This Court reviews a trial court's decision regarding a contempt motion for an abuse of discretion. *In re Contempt of Dudzinski*, 257 Mich App 96, 99; 667 NW2d 68 (2003). The trial court's factual findings are reviewed for clear error. *McFerren v B & B Investment Group*, 253 Mich App 517, 522; 655 NW2d 779 (2002). "Clear error exists when the reviewing court is left with a definite and firm conviction that a mistake has been made." *Massey v Mandell*, 462 Mich 375, 379; 614 NW2d 70 (2000). To the extent that we must examine questions of law related to the trial court's decision to hold Rohl in contempt, our review is de novo. *In re Contempt of Auto Club Ins Ass'n*, 243 Mich App 697, 714; 624 NW2d 443 (2000). Our review of constitutional issues is also de novo. *People v Pipes*, 475 Mich 267, 274; 715 NW2d 290 (2006).

## III. LEGAL ANALYSIS

Rohl first argues that the trial court failed to protect his due process rights and afford him other procedural protections during the contempt hearing. Rohl makes numerous arguments in this regard.

Rohl was found to be in criminal contempt. Criminal contempt differs from civil contempt in that the sanctions are punitive rather than remedial. *In re Contempt of Dougherty*, 429 Mich 81, 93; 413 NW2d 392 (1987).

Although civil sanctions may also have a punitive effect, the sanctions are primarily coercive to compel the contemnor to comply with the order. *In re Contempt of United Stationers Supply Co*, 239 Mich App 496, 499; 608 NW2d 105 (2000); *In re Contempt of Rochlin*, 186 Mich App 639, 645; 465 NW2d 388 (1990). Civil contempt proceedings seek compliance through the imposition of sanctions of indefinite duration, terminable upon the contemnor's compliance or inability to comply. *Burnett v Burnett*, 152 Mich App 157, 161; 393 NW2d 562 (1986). By contrast, the purpose of criminal sanctions is to punish past disobedient conduct by imposing an unconditional and definite sentence. See *Dougherty, supra* at 93. A party charged with criminal contempt has a presumption of innocence and a right against self-incrimination. *In re Contempt of Auto Club Ins Ass'n, supra* at 713. In a criminal contempt proceeding, a willful disregard or disobedience of a court order must be clearly and unequivocally shown, *People v Matish*, 384 Mich 568, 572; 184 NW2d 915 (1971), and must be proven beyond a reasonable doubt. *In re Contempt of Auto Club Ins Ass'n, supra* at 714.

According to Rohl, he was not informed of the charges against him before the contempt hearing and was not afforded the opportunity to present witnesses. When a contempt proceeding is criminal, it "requires some, but not all, of the due process safeguards of an ordinary criminal trial." *Dougherty, supra* at 91. A defendant charged with contempt is entitled to be informed of the nature of the charge against him or her and to be given adequate opportunity to prepare a defense and to secure the assistance of counsel. *Rochlin, supra* at 649. A defendant charged with contempt is entitled to be informed not only whether the contempt proceedings are civil or criminal, but also the specific offenses with which he or she is charged. *Id.* In this

case, the title of Warheit's motion specifically sought a determination that Rohl was in criminal contempt. Moreover, on November 2, 2005, Rohl filed a "Memorandum of law in opposition to Warheit's motion for criminal contempt." The fact that Rohl filed this document belies any contention that he was not aware of the nature of the contempt charges against him.

Regarding Rohl's claim that he was not afforded the opportunity to present witnesses at the hearing, it is true that the accused in a contempt proceeding is entitled to be given time to prepare a defense, secure the assistance of counsel, and produce witnesses on his or her behalf. *In re Collins*, 329 Mich 192, 196; 45 NW2d 31 (1950). However, the proper procedures for criminal contempt were adhered to in this case. On September 30, 2005, Warheit filed a motion for an order to show cause why Rohl should not be held in criminal contempt; as required by MCL 3.606(A)(1), Warheit's motion was supported by the affidavit of Thomas H. Stidham, as well as other documentary evidence. On November 2, 2005, Rohl filed his memorandum opposing Warheit's motion. The contempt hearing was held on December 7, 2005. Rohl therefore had more than one month from the time he filed his memorandum until the time of the contempt hearing to secure any witnesses he desired to call in his defense. Further, Rohl had the assistance of counsel during the entire contempt hearing. After the trial court ruled on the record at the hearing, counsel for Rohl asserted that Rohl was entitled to an evidentiary hearing in which he would be given the opportunity to call witnesses. However, it is significant that Rohl did not bring any witnesses to the hearing and was clearly not prepared to call any witnesses on the date of the hearing. Moreover, Rohl does not indicate what witnesses he desired to call and what they would have stated had they testified. Rohl's lack of

readiness despite having sufficient time to prepare his defense and secure witnesses does not equate to a due process violation. Clearly, if Rohl had appeared at the hearing with one or more witnesses and the trial court had precluded those witnesses from taking the stand and testifying, there would have been due process implications. Rohl had the opportunity to be heard and present a defense, but he did not come to the contempt hearing with witnesses who were prepared to testify. We therefore reject Rohl's claim that he was denied the opportunity to present witnesses at the contempt hearing.

According to Rohl, the following comments made by the trial court at the contempt hearing demonstrate that the trial court improperly shifted the burden of proof from appellees to him:

> I haven't heard one iota of explanation in good faith why Mr. Rohl should not be found in contempt.
>
> *   *   *
>
> The judge in the bankruptcy court clearly stated in his opinion after reviewing all of the facts and circumstances, ["]the Court finds as a matter of fact that Rohl has intended to hinder, delay and defraud Warheit and create a sham transaction to prevent Warheit from reaching Rohl's interest in his law firm through the appointment of a receiver.["]

Other than quoting this passage in his appellate brief, Rohl offers no explanation regarding how the court improperly shifted the burden of proof from appellees to him. It is not enough for an appellant to simply announce a position or assert an error in his or her brief and then leave it up to this Court to discover and rationalize the basis for the claims, or unravel and elaborate the appellant's arguments, and then search

for authority either to sustain or reject the appellant's position. *Yee v Shiawassee Co Bd of Comm'rs,* 251 Mich App 379, 406; 651 NW2d 756 (2002). In light of Rohl's failure to adequately develop his argument and cite legal authority to sustain his position, we deem this portion of Rohl's due process argument abandoned. *Id.*

Rohl next argues that there was no evidence demonstrating criminal contempt beyond a reasonable doubt. Rohl does not elaborate on this argument. To the extent that Rohl has not developed this argument or cited legal authority to sustain his position, we deem it abandoned and decline to address it. *Id.* However, we observe that Rohl's own arguments at the contempt hearing demonstrate Rohl's guilt of criminal contempt beyond a reasonable doubt. At the contempt hearing, appellee argued that Rohl had violated the January 24, 2001, order. Rather than rejecting or denying appellee's claims outright, Rohl attempted to explain that the actions he took that were in apparent violation of the trial court's order were not in fact true violations. In response to the charge that he had loaned $10,000 to a friend's restaurant out of his personal funds in contravention of the court's order, Rohl argued that the loan to the restaurant was not an expense at all and did not violate the court's order because it was an asset that is collectible by the estate. Contrary to this argument, however, the court's order forbade Rohl "from transferring personal assets without approval of the Court" except for payments associated with his personal, ordinary expenses. Similarly, Rohl's claims that the stock transfers did not violate the court's order are also false, as the January 24, 2001, order specifically prohibited stock transfers without the court's prior approval. Thus, by Rohl's own admissions with respect to these acts, he violated the court's order. It was therefore not

error for the court to find that there was evidence demonstrating that Rohl was guilty beyond a reasonable doubt of violating its order, thus justifying its criminal contempt citation.

Rohl next argues that the trial court failed to make findings of fact to justify its decision to hold him in contempt. Rohl's argument regarding this issue consists almost entirely of a lengthy quotation from our opinion in *In re Contempt of Scharg*, 207 Mich App 438; 525 NW2d 479 (1994), in his appellate brief. "An appellant must properly argue issues identified in the statement of the questions in order to properly present an appeal." *Richmond Twp v Erbes*, 195 Mich App 210, 220; 489 NW2d 504 (1992), overruled in part on other grounds by *Bechtold v Morris*, 443 Mich 105 (1993). The appellant may not merely announce his or her position and leave it to this Court to discover and rationalize the basis for those claims. *Yee, supra* at 406. Although Rohl failed to properly present and argue this issue on appeal, we will briefly address it.

A court that is adjudicating contempt proceedings without a jury must make findings of fact. *S Abraham & Sons, Inc v Dep't of Treasury*, 260 Mich App 1, 24; 677 NW2d 31 (2003). Our examination of the transcript of the contempt hearing reveals that the trial court's findings in this case were based on the bankruptcy judge's findings in the bankruptcy proceedings. Rather than make its own factual findings, the trial court simply adopted the findings of the bankruptcy court. Specifically, in addition to the aforementioned quote from the bankruptcy court, the trial court stated: "I further find that Mr. Rohl was found by [the bankruptcy court] to have used his personal expenses . . . to pay his personal debts in the contravention of this Court's [o]rder of January 24th, 2002 [sic]."

In *Brandt v Brandt*, 250 Mich App 68, 73; 645 NW2d 327 (2002), the trial court, in a criminal contempt proceeding, issued an opinion and order finding the respondent in contempt of court without stating its findings of fact. Instead, the trial court simply adopted the proposed findings of fact that had been submitted by the petitioner. *Id.* This Court ruled that it was not improper for the trial court to adopt of the findings of fact that had been submitted by the petitioner. *Id.* Although the contempt proceeding in *Brandt* dealt with a finding of contempt resulting from the violation of a personal protection order, which is governed by MCR 3.708 rather than MCR 3.606 like the instant case, MCR 3.708 contains a provision requiring that the court issue findings of fact. MCR 3.708(H)(4); *Brandt, supra* at 73. Similarly, we find no error in the trial court's adoption of the findings of the bankruptcy court in this case. Because many of the issues were the same in this case and in the bankruptcy case, it is logical that the bankruptcy court's findings on the same issues would be applicable and thereby be adopted by the trial court.

Rohl next argues that the motion to hold him in contempt and sentence him to jail was an improper attempt to collect a debt. Before the trial court, Rohl's counsel argued that appellee's motion was a thinly veiled attempt to throw Rohl in the equivalent of an American debtor's prison. However, the court ruled that criminal contempt was appropriate because Rohl had violated the court's order on multiple occasions and that the punishment was for Rohl's violation of the court's order, and not for failure to pay appellees for debts owed on a private contract.

It is true that under Const 1963, art 1, § 21, "[n]o person shall be imprisoned for debt arising out of or

founded on contract, express or implied, except in cases of fraud or breach of trust." However, this constitutional provision does not render improper the trial court's order declaring Rohl to be in criminal contempt because the criminal contempt finding at issue was not based on a contractual debt, but rather on Rohl's failure to comply with a court order related to the enforcement of court-imposed monetary sanctions. We also emphasize that the jail sentence at issue was not imposed because Rohl was unable to pay a debt, but because he transferred and used funds and other property contrary to the trial court's January 24, 2001, order.

MCL 600.1701 clearly states that the circuit court has the power to punish, "by fine or imprisonment, or both," attorneys and others who engage in misconduct by failing to pay "any sum of money which the court has ordered to be paid." MCL 600.1701(e). The trial court clearly affirmed in its restatement of the bankruptcy court's opinion that Rohl "intended to hinder, delay, and defraud Warheit and create a sham transaction to prevent Warheit from reaching Rohl's interest in his law firm through the appointment of a receiver," and further that Rohl "used his personal expenses . . . to pay his personal debts in . . . contravention of" the trial court's January 24, 2001, order. There is no indication that the trial court employed the criminal contempt citation as a punishment for Rohl's failure to pay the debts he owed appellees; rather, the trial court properly found Rohl in criminal contempt for failing to abide by the trial court's January 24, 2001, order.

Rohl also argues that because the contempt involved a criminal matter rather than a civil matter, the contempt proceeding should have been initiated by a county prosecutor, and not by a private attorney. At the outset, we observe that "criminal contempt is really

only a 'quasi-crime' . . . ." *In re Contempt of Auto Club Ins Ass'n*, *supra* at 713. As the United States Supreme Court stated in *Young v United States ex rel Vuitton et fils SA*, 481 US 787, 800; 107 S Ct 2124; 95 L Ed 2d 740 (1987), criminal contempt proceedings "are not intended to punish conduct proscribed as harmful by the general criminal laws. Rather, they are designed to serve the limited purpose of vindicating the authority of the court." Thus, the mere fact that the contempt involved criminal contempt rather than civil contempt does not warrant the conclusion that the contempt action must have been initiated by a prosecutor.

Rohl cites *Young* in support of his argument that a criminal contempt motion must be brought by a prosecutor. In *Young*, a federal district court appointed two attorneys acting as counsel for the complainant in a trademark infringement action to prosecute criminal contempt charges against the defendants related to an alleged violation of an injunction entered in the case. See *id.* at 791-792. The United States Supreme Court exercised its "supervisory power" and reversed the criminal contempt convictions of the defendants, holding that "counsel for a party that is the beneficiary of a court order may not be appointed to undertake contempt prosecutions for alleged violations of that order." *Id.* at 790. The Court's holding in *Young* was based on the Court's supervisory authority over federal district and appeals courts. *Id.* at 809. The United States Supreme Court's supervisory power does not extend to state courts. *Dickerson v United States*, 530 US 428, 438; 120 S Ct 2326; 147 L Ed 2d 405 (2000). Therefore, the holding in *Young* does not control the present state criminal contempt proceeding.

Furthermore, *Young* is factually and procedurally distinguishable from the instant case because in the

instant case, although Warheit was a beneficiary of the trial court's January 24, 2001, order inasmuch as the order was intended, in part, to ensure that he recovered the judgment, costs, and attorney fees awarded to him in the underlying action, Warheit was not appointed by the court to undertake the criminal contempt prosecution; rather, he initiated the proceedings on his own. Moreover, MCR 3.606, which governs contempt that occurs outside the immediate presence of a court, permits a private attorney to initiate a contempt proceeding by ex parte motion. MCR 3.606 states, in relevant part, "[f]or a contempt committed outside the immediate view and presence of the court, on a proper showing on ex parte motion supported by affidavits, the court shall . . . order the accused person to show cause, at a reasonable time specified in the order, why that person should not be punished for the alleged misconduct . . . ." MCR 3.606(A)(1). MCR 3.606(A) does not make a distinction between criminal and civil contempt. Accordingly, because it is apparent that such an ex parte motion would ordinarily, if not always, be brought by a party to a case against an opposing party and because civil cases often involve only private parties, it is manifest that the Michigan Court Rules contemplate that a private party (and by obvious extension that party's attorney acting in a representative capacity) may initiate and prosecute a motion to hold an opposing party in criminal contempt. In this case, Warheit's motion was supported by the proper documentary evidence required under MCR 3.606. Therefore, the contempt proceedings were properly initiated by appellee under MCR 3.606.

Rohl's final argument is that the contempt action against him should have been barred under the doctrines of laches and collateral estoppel. Rohl does not cite a single case or other legal authority regarding the

applicability of laches or collateral estoppel and, accordingly, does not provide any significant analysis of those doctrines as applied to the facts of this case. We decline to provide relief to Rohl on the basis of this issue because he has failed to adequately brief the merits of his argument and has therefore abandoned this argument on appeal. See *Yee, supra* at 406.

Affirmed.