# STATE OF MICHIGAN

# COURT OF APPEALS

*In re* HEWITT/YOESTING, Minors.

UNPUBLISHED
November 14, 2017

No. 338329
Tuscola Circuit Court
Family Division
LC No. 15-010972-NA

Before: BECKERING, P.J., and O'BRIEN and CAMERON, JJ.

PER CURIAM.

Respondent-mother appeals as of right the trial court's order terminating her parental rights to her two minor daughters, BH and LY. The trial court terminated respondent's parental rights under MCL 712A.19b(3)(b)(*ii*) (failure to prevent physical injury, or physical or sexual abuse), (g) (failure to provide proper care and custody), and (j) (reasonable likelihood of harm to child if child is returned to parent's care). We affirm.

In December 2015, a petition was filed alleging that respondent and her husband had engaged in domestic violence in the presence of the children.[1] An order of adjudication was then entered in February 2016, after respondent entered pleas of admission and no contest to allegations in the petition. The children remained with respondent, and services were put in place for the goal of reunification. On August 2, 2016, a supplemental petition was filed requesting termination of respondent's parental rights.[2] The petition alleged that on July 30, 2016, LY left respondent's home with David Brigham, a family friend, in the middle of the night, and that Brigham physically and sexually assaulted LY for several hours. The petition further alleged that respondent and her husband had engaged in sexual activity with Brigham and knew him to be "sexually violent."

---

[1] The petition additionally reported an earlier child protection proceeding in connection with respondent's first husband sexually abusing her daughter, which led to respondent voluntarily terminating her rights to her four other children.

[2] A request for removal of the children from respondent's care was also filed on that date, and the trial court granted that request and ordered that the children be placed in the care of DHHS.

-1-

At the termination hearing held in March 2017, respondent admitted that the original petition was filed as a consequence of domestic violence between herself and her husband, and that she had entered a plea of responsibility in the matter. Respondent further testified that, despite having some doubts at the time, she did not dispute that her first husband had sexually assaulted their daughter in 2005, and admitted that this daughter had told respondent that she had also been sexually assaulted by two others. Respondent admitted that if the latter allegation was true, it meant that she had been sexually involved with three men who had sexually assaulted her children.

Respondent conceded that Brigham had sexually assaulted her daughter, and agreed that she should not have "allowed a situation to develop where . . . [the girl] would leave with [Brigham] because she knows him and trusts him." Respondent admitted that she learned Brigham may have molested his own daughters about one or two years before he abducted LY. Respondent stated that she did not warn her daughters that Brigham might be dangerous because she thought they would not be around him enough for such an issue to arise.

A pediatric emergency nurse who treated LY in connection with the injuries she suffered at the hands of Brigham testified that the case stuck out to her because of the "brutality" of it. The nurse testified that LY had a black eye and was severely bruised "basically everywhere," including on her neck and breasts. The nurse also testified that respondent was present at the hospital, but the nurse mostly remembered respondent "being on her cell phone," adding, "I had to literally at one point tell them it's okay to comfort her." The nurse opined that respondent's behavior in that situation did not seem protective or otherwise parental. The nurse testified that respondent "was very adamant about leaving" and became upset when informed that LY would be admitted to the hospital. The nurse further testified that she observed no efforts on respondent's part to comfort the child, other than telling the child that she had also been raped in her youth.

The children's lawyer-guardian ad litem opined as follows:

> She did not protect her children the first round with her first husband. She did not protect these two children in this particular situation. She talks big, she delivers nothing. She wants five minutes alone with Brigham, she'll kick her husband out, she'll turn right back around to this courthouse.

> * * *

> And . . . she has had services upon services upon services. . . .

> * * *

> [Respondent] I am certain has learned a very painful lesson that she has failed to protect children way too many times. I am not confident that she has the instinct that it takes to protect children. . . . I do not think that that can be taught to her. I don't think that even when she's in a good mood to learn that she has been receptive of it and has not demonstrated that she has learned anything. I regret that my position is that her rights should be terminated.

-2-

At the conclusion of the five-day termination trial, the trial court made its decision to terminate respondent's parental rights. The trial court stated that "while the court would like to believe that [respondent] has learned her lesson and that no child of hers will suffer injury or abuse in the future, her past actions indicate otherwise." The court found it "totally alarming that [respondent] did not see this coming. Instead though, she allowed her children . . . to become associated with and continue associating with a believed and known perpetrator." The court concluded, "[Respondent] failed once. She failed twice. And . . . she will fail again. . . . The proofs are clear and convincing to this court that [MCL 712A.19b(3)(b)(*ii*)] has been met."

The trial court applied similar reasoning in concluding that factors MCL 712A.19b(3)(g) and (j) were also met, and that termination was in the children's best interests, while also noting respondent's failure to benefit from reunification services, the children's special needs, and respondent's failure to show proper parental alarm and compassion in response to the severe abuse of her daughter. The court also cited authority for its application of the doctrine of anticipatory neglect, which recognizes that how a parent treats one child is probative of how that parent would treat other children. See *In re LaFrance,* 306 Mich App 713, 730; 858 NW2d 143 (2014). An order terminating respondent's parental rights was thus entered on May 2, 2017.

On appeal, respondent first argues generally that the trial court erred in terminating her parental rights. We disagree. An appellate court "review[s] for clear error both the court's decision that a ground for termination has been proven by clear and convincing evidence and . . . the court's decision regarding the child's best interest." *In re Trejo*, 462 Mich 341, 356-357; 612 NW2d 407 (2000). "Clear error exists when some evidence supports a finding, but a review of the entire record leaves the reviewing court with the definite and firm conviction that the lower court made a mistake." *In re Dearmon*, 303 Mich App 684, 700; 847 NW2d 514 (2014). This Court must defer to the trial court's special opportunity to observe the witnesses. *Id.*

"If the court finds that there are grounds for termination of parental rights and that termination of parental rights is in the child's best interests, the court shall order termination of parental rights and order that additional efforts for reunification of the child with the parent not be made." MCL 712A.19b(5).

Here, the trial court terminated respondent's parental rights under MCL 712A.19b(3)(b)(*ii*), (g), and (j), which permit termination under the following circumstances:

> (b) The child or a sibling of the child has suffered physical injury or physical or sexual abuse under 1 or more of the following circumstances:

> \* \* \*

> (*ii*) The parent who had the opportunity to prevent the physical injury or physical or sexual abuse failed to do so and the court finds that there is a reasonable likelihood that the child will suffer injury or abuse in the foreseeable future if placed in the parent's home.

> \* \* \*

(g) The parent, without regard to intent, fails to provide proper care or custody for the child and there is no reasonable expectation that the parent will be able to provide proper care and custody within a reasonable time considering the child's age.

* * *

(j) There is a reasonable likelihood, based on the conduct or capacity of the child's parent, that the child will be harmed if he or she is returned to the home of the parent.

The trial court offered detailed findings and conclusions in connection with each of these statutory grounds, and also with respect to the children's best interests. In arguing this issue, however, respondent neither differentiates between those three statutory criteria nor distinguishes the statutory criteria from the best-interest inquiry. Nor does respondent specifically attack any of the trial court's findings, or discuss any specific evidence of record. Instead, respondent merely summarizes the reasons for opposing termination that respondent's attorney put forward in closing argument, then states very generally that "considering all of the testimony including that from [respondent], the court erred in terminating her parental rights."

Respondent thus does not dispute the trial court's evidentiary bases for any of its conclusions, but instead urges this Court to reinterpret the evidence in accord with the views of respondent's attorney below. However, in light of our duty to defer to the trial court's special opportunity to observe the witnesses, *In re Dearmon*, 303 Mich App at 700, such argument does not provide us with a valid basis for reversing the trial court's conclusions.[3] See *DeGeorge v Warheit*, 276 Mich App 587, 594-595; 741 NW2d 384 (2007) ("It is not enough for an appellant to simply announce a position or assert an error in his or her brief and then leave it up to this Court to discover and rationalize the basis for the claims, or unravel and elaborate the appellant's arguments, and then search for authority either to sustain or reject the appellant's position."); *Houghton v Keller*, 256 Mich App 336, 339-340; 662 NW2d 854 (2003) ("An appellant's failure to properly address the merits of his assertion of error constitutes abandonment of the issue.").

For these reasons, respondent has failed to show any clear error in the trial court's findings or conclusions.

---

[3] In any event, we find that the trial court did not err in finding clear and convincing evidence to terminate respondent's parental rights under MCL 712A.19b(3)(b)(*ii*), (g), and (j). As stated above, respondent allowed BH and LY to continue associating with Brigham, a known sexual perpetrator. The continued association eventually led to Brigham physically and sexually assaulting LY. Respondent failed to provide proper care or guidance to protect her children from having contact with Brigham. The trial court also did not err in its best-interest determination. The trial court found that respondent's mental health problems, failure to benefit from services offered, lack of any bond with her children, and repeated issues involving domestic and sexual abuse impaired her ability to care for her children.

Next, respondent argues that the trial court erred in allowing the emergency room nurse to offer her personal opinion on the propriety of respondent's behavior during her visit with LY, and in sustaining an objection to testimony concerning how many children shared the subject children's foster-care placement. We disagree. We review the trial court's evidentiary rulings for an abuse of discretion. *Price v Long Realty, Inc*, 199 Mich App 461, 466; 502 NW2d 337 (1993).

The following exchange took place while petitioner was questioning the emergency room nurse:

*Q*. You've indicated that there might not be one . . . specific type of reaction that a parent might have when seeing their child suffer injuries such as [this child] suffered, . . . is that correct?

*A*. True, yes.

*Q*. Might there be . . . say a range of . . . appropriate reactions that might be expected?

*A*. Yes.

*Q*. If there is such a range, do you think that the reactions of [respondent] fell within it?

*A*. No.

*Q*. Why?

*A*. That's my personal opinion. Because I didn't—there was nothing—

*[RESPONDENT'S COUNSEL]*: I would object. Her personal opinion doesn't necessarily come into play when I—I guess let me ask if you can repeat the question one more time so I make sure I'm stating it correctly.

*[PETITIONER'S COUNSEL]*: The . . . question was if there was such a range, do you think [respondent's] behavior fell within it?

*THE COURT*: And she said no.

*[PETITIONER'S COUNSEL]*: And then I asked her to say why.

*[RESPONDENT'S COUNSEL]*: I would think that her professional opinion should what—should come into play here. That's what everyone's professional opinion when we have professional witnesses testifying. Personal opinions don't have any place in testifying in relation to your employment and your treatment of a child.

*[PETITIONER'S COUNSEL]*: . . . I'd start by saying I think it's a perfectly appropriate lay opinion. And I think that [opposing counsel] has tried to establish whether she believed in her personal opinion that this was an appropriate reaction.

*THE COURT*: Correct. The objection's overruled. You may answer the question, if you can remember it, ma'am.

*THE WITNESS*: No, . . . I don't think she fell within that because I didn't see any kind of reaction. That's why this child is stuck in my mind and it'll probably always be in my mind.

Respondent argues that this expression of opinion was irrelevant and otherwise not in accord with the rules of evidence.

" 'Relevant evidence' means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." MRE 401. Under this broad definition of "relevant evidence," this opinion from the perspective of a pediatric emergency nurse was certainly relevant to the issue of respondent's parental fitness.

Respondent protests generally that "[t]here was no basis in fact or law to allow such an opinion over objection," and specifically that the witness "was never qualified as an expert," but does not otherwise suggest or set forth any argument that the opinion at issue should have triggered the court's scrutiny applicable to expert witnesses under MRE 702.[4] Further, in dispositional termination hearings, "[t]he Michigan Rules of Evidence do not apply, other than those with respect to privileges . . . ," and so "all relevant and material evidence . . . may be received by the court and may be relied upon to the extent of its probative value." MRE 3.977(H)(2).

Moreover, the actual objection below was only that the nurse was testifying as a professional, in which capacity she can only offer a professional opinion, not a personal one. Petitioner made clear that the opinion sought was indeed a "lay opinion." Even though the nurse was never qualified as an expert, MRE 701 permits a witness who is not testifying as an expert to testify in the form of an opinion if the opinion is "(a) rationally based on the perception of the witness and (b) helpful to a clear understanding of his [or her] testimony or the determination of a fact in issue." The nurse's opinion that respondent did not react appropriately to LY's circumstances was rationally based on the nurse's perception of respondent's reactions to seeing LY in the hospital emergency room after her recent severe abuse, and that opinion was helpful to

---

[4] MRE 702 authorizes a trial court to admit evidence from a witness "qualified as an expert by knowledge, skill, experience, training, or education" where the court "determines that recognized scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue . . . ."

a clear understanding of respondent's capacity to recognize and understand her child's need for empathy and comforting, and also respondent's capacity to offer and provide appropriate care and comfort for a child who has been severely abused.[5]

Because the nurse's opinion concerning the propriety of respondent's behavior in the emergency room was relevant, the rules of evidence at such hearings are relaxed to permit such testimony, and the testimony qualified as lay opinion testimony admissible under MRE 701, the trial court did not abuse its discretion in admitting the nurse's testimony.

The issue concerning the number of children in the foster-care placement arose during the cross-examination of a foster care case manager. Respondent questioned the case manager regarding the number of children residing at the foster home that BH and LY were placed in. The case manager answered that seven children currently lived there, and the prosecutor objected to the answer on the grounds of relevancy. The trial court sustained the objection ruling the testimony irrelevant.

Respondent argues that the objected-to testimony "was relevant and should have been admitted" because the trial court can consider how the foster home compares with the parent's home when making its best-interest determination. However, respondent neither acknowledges that the transcript actually captured the answer "seven," nor explains why that or any other answer would have improved her position at trial. In any event, the trial court made plain that it was not concerned about the number of children sharing the subject children's foster-care placement, especially in light of respondent's own admission that a foster home does not become inappropriate simply for having multiple children. Refusing to allow further questioning along those lines was simply an exercise in tailoring the testimony to matters at issue. Indeed, respondent elicited other relevant testimony regarding the conditions of the foster home that the trial court was able to consider when making its best-interest determination.

For these reasons, we find no merit in respondent's evidentiary issues.

Affirmed.

/s/ Jane M. Beckering
/s/ Colleen A. O'Brien
/s/ Thomas C. Cameron

---

[5] We note that the trial court's several expressions of concern while delivering its findings regarding respondent's inappropriate reactions to her daughter's recent severe abuse indicate that the court was expressing its own concern in that regard, not merely adopting the nurse's.