*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

*In re* BABY DOE, Minor.

UNPUBLISHED
August 22, 2024

No. 369542
Roscommon Circuit Court
Family Division
LC No. 22-726165-NA

Before: MALDONADO, P.J., and M. J. KELLY and RICK, JJ.

PER CURIAM.

Respondent-mother appeals as of right the trial court's order assuming jurisdiction over the minor child, Baby Boy Doe, following a jury trial. We affirm.

## I. FACTUAL BACKGROUND

At the initial preliminary hearing, a referee for the Family Division of the Crawford Circuit Court recited the reasons for Doe's removal set forth in the petition. It stated that in September 2022, not long after Doe was born, he was placed with an adoptive family through a private adoption arrangement. Mother backed out of the adoption arrangement in October 2022. Also in October 2022, petitioner, the Department of Health and Human Services (DHHS), received a report that Doe tested positive for THC[1] at birth. Additionally, the petition stated that Doe was diagnosed with respiratory syncytial virus[2] (RSV) in November 13, 2022. Mother and Doe's

---

[1] "Tetrahydrocannabinol (THC) is a cannabinoid found in cannabis," and "the principal psychoactive constituent of cannabis," or marijuana. Wikipedia, *Tetrahydrocannabinol* <https://en.wikipedia.org/wiki/Tetrahydrocannabinol> (accessed August 15, 2024).

[2] "Respiratory syncytial virus (RSV) is a seasonal, highly contagious respiratory virus that often feels like a common cold. But infants and some adults face a higher risk of severe symptoms and complications. Treatment usually involves at-home care. Some people need oxygen, fluids or other care at a hospital to fully recover." Cleveland Clinic, *RSV (Respiratory Syncytial Virus)*

-1-

putative father took Doe to the hospital and were told that he needed to be placed on oxygen, but Mother took Doe home against medical advice. Children's Protective Services (CPS) met with mother in an attempt to get her to bring Doe back to the hospital, but she refused. According to the petition, mother instead planned to travel to Missouri with Doe, despite his illness. Mother eventually agreed to leave Doe with his putative father's ex-girlfriend, JT, but refused to designate power of attorney for Doe before leaving the state.

The petition further alleged that as of November 14, 2022, mother had left the state. CPS called JT, who stated that she was concerned about Doe's breathing. CPS advised her to bring him back to the hospital. According to the petition, "[h]ospital staff want[ed] to transfer [Doe] to Traverse City Munson for elevated care but are unable to do so without parental consent." After reviewing the petition, the trial court concluded that there was "sufficient information" to support removal. The court authorized the petition and adjourned the hearing pending appointment of counsel for the parents.

When the preliminary hearing resumed, DHHS explained that the case was being transferred from Crawford County to Roscommon County, in light of the parents' and child's actual residency. When proceedings resumed in Roscommon County, the court recited allegations from a second amended petition, which closely mirrored those recited by the Crawford County court in the earlier proceeding. At the next hearing, mother's appointed counsel stated that mother was "prepared to waive the probable cause finding and ask the Court to authorize a petition and schedule a pretrial." With the agreement of all the parties, the court waived the preliminary hearing and scheduled a pretrial hearing. In the meantime, a third amended petition was filed, which added further allegations regarding a routine probation check that took place in the home where mother and father were living with Doe, which resulted in father's arrest.

At the adjudication trial, JT testified that in October 2022, she met Doe's father at a small apartment in Roscommon. Father unlocked the door of the apartment to present Doe to her, and it was apparent that Doe had been left unattended. JT described the place as "small" and lacking running water. JT added that it was "very warm in there," with "this wall heater thing with flames" that "[l]ooked kind of sketchy" and "had a hose going outside of the wall," which she was "guessing" carried propane. JT stated that she offered to watch Doe while his parents were working. Between October 20, 2022, and when Doe was removed from his parents on November 14, 2022, he spent 16 overnights with JT and seven or eight nights with his parents. When CPS became involved, mother arranged to meet with CPS at JT's home. Mother told CPS that both she and the baby lived there, but mother never in fact lived with JT.

JT testified that on Monday, November 7, 2022, Doe had a cough, which was slight at first, but became progressively worse. Mother took Doe to the doctor the following Friday. According to JT, "they said his vitals were fine. They gave him a one-time steroid and sent him home with Tylenol." However, Doe's condition continued to worsen. JT continued that she expressed many of her concerns during a home visit with CPS agent Kassidy Quigley. Mother attended the home visit with Doe. During the visit, mother, JT, and Quigley agreed to a safety plan, according to

<https://my.clevelandclinic.org/health/diseases/rsv-respiratory-syncytial-virus>     (accessed August 15, 2024).

which JT "was supposed to contact CPS and take him back to the hospital if he declined in any way." There was some discussion about mother signing a power of attorney, but mother refused to do so. When asked how Doe fared that night, JT answered that he was very sleepy and that his breathing was irregular. Doe slept for the next 24 hours, keeping very quiet, "just so lifeless," which she found "really scary." JT took Doe back to the hospital at around noon that Monday, November 14, where "the ER . . . put him right in [a] respiratory room because his oxygen was low."

Craig Sharp, a CPS supervisor, testified that he filed the initial petition for removal. His primary concerns were that Doe was currently in the emergency room, experiencing respiratory failure, and in need of supplemental oxygen and intense monitoring, all while his parents were out of state. Sharp explained that the petition was especially necessary because nobody in Michigan was able to provide consent for Doe's emergency medical treatment. Sharp further stated that after the petition was granted, Doe was transported to a pediatric intensive care unit in Traverse City, where he remained for six days. Doe was then released to "a relative foster home." Sharp added that while the petition was pending before the court, Doe's putative father consented to Doe's transport to the Traverse City medical facility. Sharp did not consider withdrawing the petition after the father consented to the transfer "because the parents had shown a pattern of not following through with the recommended . . . medical treatment for the child."

Detective Specialist Daniel Cochrane of the Roscommon County Sheriff's Department elaborated on some of the events that were included in the third amended petition. He testified that on August 23, 2023, he went to the house where mother and father were living after receiving information the father "was consuming and possibly selling narcotics." Detective Cochrane explained that he went to the house to execute a "probation compliance check." Detective Cochrane and a team of officers knocked at the front door but received no answer despite hearing shuffling sounds inside. Detective Cochrane then entered the house and found both parents inside. The police discovered narcotics paraphernalia, including a metal spoon bearing residue, a glass smoking pipe bearing residue, a used hypodermic needle, a cotton swab containing suspected narcotics, and a digital scale. The cotton swab field tested positive for "[f]entanyl compound or methamphetamine." Detective Cochrane testified that fentanyl presented a serious risk of "overdose and possible death," that the drug could be absorbed through the skin, and that the drug paraphernalia was located where a child could access it. Doe's father was subsequently arrested.

Mother testified that she considered placing Doe for adoption, and that Doe spent just over a month with a prospective adoptive family. Mother stated that she retrieved him "due to feeling super uncomfortable with the family." When asked where Doe stayed while she was working, mother answered, "It was between [Doe's father] and [JT] since she was supposed to be daycare." According to mother, "for the first two weeks [Doe] was strictly just at home with us before we involved [JT] as daycare." Mother testified that after Doe's father was arrested in August 2023, "he packed his stuff, and he immediately moved out." She had seen him since, but the two were not in a relationship "at the moment." She admitted, however, that she was seen with him on the first day of trial, and that the two "may have kissed."

The jury found that "Baby Doe's home or environment, by reason of neglect, cruelty, drunkenness, criminality, or depravity on the part of [mother], is an unfit place for the child to live in," and the trial court assumed jurisdiction. This appeal followed.

## II. ANALYSIS

### A. WAIVER OF PROBABLE-CAUSE HEARING

Mother first argues that the trial court erred by accepting her waiver of a probable-cause hearing and by enforcing the waiver in subsequent proceedings. We disagree.

A trial court's general method of conducting court proceedings is reviewed for an abuse of discretion. *In re King*, 186 Mich App 458, 466; 465 NW2d 1 (1990). A court's decision whether to conduct an evidentiary hearing is likewise reviewed for an abuse of discretion. *Brown v Loveman*, 260 Mich App 576, 599; 680 NW2d 432 (2004). "A trial court abuses its discretion when it chooses an outcome that falls outside the range of reasonable and principled outcomes." *Fette v Peters Constr Co*, 310 Mich App 535, 547; 871 NW2d 877 (2015).

Relevant to this appeal, MCL 712A.2(b)(2) authorizes a court to assume jurisdiction over a minor child when the child's "home or environment, by reason of neglect, cruelty, drunkenness, criminality, or depravity on the part of a parent, guardian, nonparent adult, or other custodian, is an unfit place for the juvenile to live in."

MCL 712A.13a(9) provides as follows:

> The court may order placement of the child in foster care if the court finds all of the following conditions:
>
> (a) Custody of the child with the parent presents a substantial risk of harm to the child's life, physical health, or mental well-being.
>
> (b) No provision of service or other arrangement except removal of the child is reasonably available to adequately safeguard the child from risk as described in subdivision (a).
>
> (c) Continuing the child's residence in the home is contrary to the child's welfare.
>
> (d) Consistent with the circumstances, reasonable efforts were made to prevent or eliminate the need for removal of the child.
>
> (e) Conditions of child custody away from the parent are adequate to safeguard the child's health and welfare.

MCR 3.965(B) in turn requires a court, under Subrule (5), to "determine if the petition should be dismissed or the matter referred to alternate services"; under Subrule (6), to "advise the respondent of the right to the assistance of an attorney" from the preliminary hearing forward; under Subrule (7), to "advise the respondent of the right to trial on the allegations in the petition"; and under Subrule (9), to "allow the respondent an opportunity to deny or admit the allegations and make a statement of explanation."

MCR 3.965(C)(1) authorizes a court to "receive evidence, *unless waived*, to establish that the criteria for placement" are satisfied. (Emphasis added.) And MCR 3.965(B)(13) authorizes the court to order placement on the basis of "determinations . . . previously made." In this case, as noted, the Crawford County court authorized removal, but declined to decide probable cause to authorize the petition, recognizing that Roscommon County was the proper venue. After the case was transferred to Roscommon County, mother's attorney stated that "we'd be prepared to *waive the probable cause finding* and ask the Court to authorize a petition and schedule a pretrial." (Emphasis added). Under the doctrine of invited error, a party is foreclosed from raising as error on appeal any action or decision that the party successfully advocated below. See *Vannoy v City of Warren*, 386 Mich 686, 690; 194 NW2d 304 (1972), citing 5 Am Jur 2d, Appeal and Error, §§ 713-722, pp 159-166. See also *In re Baby Boy Doe*, ___ Mich App ___, ___ n 2; ___ NW3d ___ (2024) (Docket No. 366773); slip op at 4 n 2 (noting that "an affirmative waiver . . . extinguishes any error on appeal"). Thus, mother has waived her right to claim error based on the lack of a probable-cause hearing on appeal.

In attempting to challenge the validity of the waiver, mother claims that she was not advised of the procedural consequences of waiving the preliminary hearing, or asked "whether her waiver was being done with knowledge of her rights and voluntarily[.]" However, she does not assert that counsel failed to discuss the question of waiver with her, or otherwise acted contrary to her wishes in the matter. She likewise cites no authority indicating that the trial court has a duty to inform or question a respondent about their knowledge of what a waiver entails. For these reasons, mother's claim must fail.

As earlier noted, mother also challenges the enforcement of the waiver in the subsequent proceedings. Notably, mother's counsel filed a motion for dismissal and for the immediate return of Doe on July 21, 2023. In the motion, counsel acknowledged that mother "waived a probable cause finding at the preliminary exam," but requested that the court "schedule a trial or allow withdraw[al] of the preliminary hearing waiver and conduct a probable cause hearing." At a hearing on the motion, the court observed that the "[p]reliminary hearing was waived in this matter previously," and indicated that it would not allow for the withdrawal of that waiver.

Mother argues that "[i]t was inappropriate to allow allegations completely unrelated to the original petition to proceed to trial without conducting a separate preliminary hearing on the new allegations," but cites no authority for the proposition that probable cause should be considered again in response to procedural delays or new allegations raised after a petition has been authorized and the case has proceeded to disposition. Mother also argues that trial court abused its discretion by declining to allow her attorney to question Craig Sharp, who filed the third amended petition against her. Her complaint on this point specifically refers to testimony taken during a hearing related to a new petition filed against Doe's father, after the latter established his paternity. Mother's counsel requested an opportunity "to question the witness . . . [r]elative to the probable cause in regards to [Doe's father]," on the ground that mother's "interest[s] currently align" with those of the father. The court responded, "Well, he has an attorney," and instructed the witness to step down. On appeal, mother admits that the father's attorney "was afforded the ability to question the Department regarding the August 2023 allegations at the preliminary hearing," but suggests that, to the extent that the investigator's testimony related to mother's actions, her attorney should also have been permitted to cross-examine the witness. Once again, mother cites no authority for the proposition that a court conducting a hearing on a petition relating to *one*

parent must allow the *other* parent the opportunity to cross-examine witnesses. Further, mother says nothing about what useful testimony any such cross-examination might have elicited.

Mother additionally protests that Sharp "made no effort to amend the petition" to note that Doe's father had authorized Doe's transfer to the Traverse City medical facility. However, mother acknowledges that Sharp took that position because the father had been removed as a respondent because he had yet to establish his paternity. There is no dispute that, as of that time, the father had yet to perfect his paternity. Mother cites no authority for the proposition that a putative father has a legally recognized parent's standing to authorize such medical actions.

With regard to all three of the aforementioned claims, "[i]t is not enough for an appellant to simply announce a position or assert an error in his or her brief and then leave it up to this Court to discover and rationalize the basis for the claims . . . and then search for authority either to sustain or reject the appellant's position." *DeGeorge v Warheit*, 276 Mich App 587, 594-595; 741 NW2d 384 (2007). Mother has failed to show that she is entitled to appellate relief in connection with these arguments. Additionally, mother cannot show that relief is warranted based on the trial court's acceptance of her waiver of a probable-cause hearing, for the reasons stated *supra*.

## B. DELAY OF TRIAL

Mother next argues that the trial court erred by failing to adhere to pertinent timing requirements, and that as a result, the adjudication trial was delayed. We disagree.

Under MCL 712A.17(1), adjournment or continuances are only granted "for good cause with factual findings on the record and not solely upon stipulation of counsel or for the convenience of a party." Additionally, a court will not grant an adjournment or continuance unless:

> (a) The motion for the adjournment or continuance is made in writing not less than 14 days before the hearing.

> (b) The court grants the adjournment or continuance upon its own motion after taking into consideration the child's best interests. An adjournment or continuance granted under this subdivision shall not last more than 28 days unless the court states on the record the specific reasons why a longer adjournment or continuance is necessary. [MCL 712A.17(1)(b).]

Under MCR 3.972(A), an adjudication trial must be held "as soon as possible, but not later than 63 days" after removal, unless postponement is granted. A trial can only be postponed for the following reasons:

> (1) on stipulation of the parties for good cause;

> (2) because process cannot be completed; or

(3) because the court finds that the testimony of a presently unavailable witness is needed.  [MCR 3.972(A)(1) through (3).]

The statute further provides:

> When trial is postponed pursuant to subrule (2) or (3), the court shall release the child to the parent . . . unless the court finds that releasing the child to the custody of the parent . . . will likely result in physical harm or serious emotional damage to the child.

> If the child has been removed from the home, a review hearing must be held within 182 days of the date of the child's removal from the home, even if the trial has not been completed before the expiration of that 182-day period.

The parties do not dispute that none of the above timing specifications were met, owing to delays resulting from the transfer of the case to Roscommon County as well as delays related to the proceedings to establish paternity.  Mother only objected once, in relation to the adjournment of trial, which was originally scheduled for April 2023.  However, she did not object to the specific delays for transfer of venue or for the paternity proceedings.  This issue is therefore unpreserved. Unpreserved claims are reviewed for plain error. *In re Ferranti*, 504 Mich 1, 29; 934 NW2d 610 (2019) (quotation marks, citation, and alteration brackets omitted).  Under the plain-error standard, a respondent must "must establish that (1) error occurred; (2) the error was 'plain,' i.e., clear or obvious; and (3) the plain error affected their substantial rights."  *Id*. (citation omitted). "Generally, an error affects substantial rights if it caused prejudice, i.e., it affected the outcome of the proceedings." *In re Utrera*, 281 Mich App 1, 9; 761 NW2d 253 (2008).

As earlier noted, during the proceedings below, mother moved for dismissal of the petition and for the immediate return of Doe.  At a hearing on the motion, the trial court noted that mother objected to the most recent adjournment of trial, but explained that some issues involving a request for an expert witness made it "unlikely that trial preparation could have been done by the timeline anyway[.]"  The court also noted that the proceedings to establish father's paternity also needed to be completed.  In any event, the court stated that "in order for [MCR] 3.972 to apply the Court has to find that releasing the child to the custody of the parent, guardian, or legal custodian likely . . . will not result in physical harm or serious emotional damage to the child."  The court then asked mother's attorney, "[W]here is the home that the child would go to?"  Counsel replied, "That would be [mother's] residence."  The court replied, "I'm gonna [sic] need to hear why removal needs to continue on the Department's position," and took evidence.

Foster care worker Melissa Noffsinger testified that she had been involved with the case since it was transferred to Roscommon County.  She confirmed the parents' address and stated that she had seen only the living room and kitchen of that residence, despite repeatedly asking permission to perform a safety check.  When asked if mother had ever "reached out . . . about potentially viewing the house," Noffsinger answered in the negative.  Noffsinger listed her concerns as "[p]lumbing, no water, that they have narcotics in the home, other residents living in the home," and added that law enforcement had notified her of use of methamphetamine in the

home. Noffsinger opined that placing Doe in that environment would present "a huge safety concern with drugs and paraphernalia in the home."

The trial court declined to allow Doe to be returned to mother's care, citing the recent discovery of narcotics and drug paraphernalia in the home, the lack of a home inspection, and the general lack of evidence that the house was a fit place for Doe to live. The court continued its prior order for Doe to remain in DHHS's care.

On appeal, mother does not dispute the factual findings underlying the court's decisions to adjourn the trial or to decline to return Doe to her custody. Further, mother notes that her trial attorney once requested an adjournment of the adjudication trial because of a scheduling conflict. On that occasion, counsel tacitly agreed to a trial date in early December, while saying nothing of proceeding under protest over objections to earlier adjournments. Mother has thus abandoned any challenges to the trial court's ultimate authority to reach the question of assuming jurisdiction over Doe.

Mother frames this issue as one pertaining to constitutional due process,[3] but invokes due process only by stating generally that the trial court infringed on her due process rights "by failing to timely proceed to trial without good cause, by making comments that downplayed the seriousness of the removal of her child and commenting the delay was in her best interest, and by failing to comply with interim court rules." This argument presents no actual constitutional analysis, however, which consequently forestalls any need to engage in such analysis ourselves. See *DeGeorge*, 276 Mich App at 594-595. Moreover, mother cites no authority for the proposition that imperfect adherence to the timing requirements invalidates a court's subsequent decision to assume jurisdiction over a child. For these reasons, mother has failed to show entitlement to appellate relief.

C. EVIDENCE

Mother also argues that the trial court erred by allowing DHHS to present evidence relating to postpetition developments while not allowing her to do likewise. We disagree.

"Evidentiary rulings are generally reviewed for an abuse of discretion, which occurs when the trial court's ruling falls outside the range of reasonable and principled outcomes." *Dorsey v Surgical Institute of Mich, LLC*, 338 Mich App 199, 230; 979 NW2d 681 (2021) (quotation marks and citations omitted).

Mother contends that the trial court erred by overruling her objection to "the entry of any evidence, testimony, exhibits regarding the police investigation done on August 23rd, 2023," including the evidence of the results of field testing for suspected drugs. At trial, mother's counsel objected to the challenged evidence on relevance grounds, stating that it concerned "an

---

[3] US Const, Am XIV, § 1; Const 1963, art 1, § 17.

investigation that has resulted in charges but . . . not a conviction," and also that the evidence was "more prejudicial than it is probative."[4]  The trial court responded that

> the condition of the home that was at play at the time of the initial petitions home that the child had been in . . . would be relevant, and due to the portion of the statute that regards criminality within the home it doesn't have to necessarily be criminality of the parent. . . .  So if there's criminality within the home that certainly is something that a jury could hear.

Further, as noted, mother testified that she and Doe lived at the house where the search was conducted, and her attorney earlier stated that it was also the location to which Doe would be returning if mother regained custody.

This Court has held that MCL 712A.2 "speaks in the present tense, and, therefore, the trial court must examine the child's situation at the time the petition was filed." *In re MU*, 264 Mich App 270, 279; 690 NW2d 495 (2004).  This Court has also recognized "the important distinction between evidence of an event supporting jurisdiction that was not alleged in a petition and evidence obtained after the petition was filed." *In re Dearmon*, 303 Mich App 684, 698; 847 NW2d 514 (2014).  Accordingly, "evidence relevant to prove or defend a statutory ground for termination is potentially admissible at an adjudication despite that the evidence involves postpetition facts." *Id.* at 687-688.

Mother's main appellate objection is that the challenged evidence concerned matters not alleged in the original petition.  This argument lacks merit.  The operative petition at the time of the adjudication trial was the third amended petition, filed August 25, 2023.  The allegations in that petition included several pertaining to the August 2023 probation compliance check, during which police collected drug paraphernalia and narcotics.  For these reasons, mother cannot show that the trial court erred by admitting evidence related to the investigation of Doe's father's alleged probation violation.

Mother additionally argues that the trial court erred by allowing her to be questioned regarding her continuing relationship with Doe's father, over her counsel's objection.  Counsel repeated the objection when Doe's guardian ad litem asked mother, "[I]f you get your child back, would you continue or restart your relationship with [Doe's father]?"  The trial court allowed the questioning on the ground that

> it's relevant because there . . . has been testimony she removed him from the home . . . because he can't be in while she's going through this issue with her child.  And

---

[4] "Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice . . . ."  MRE 403.  Respondent-mother does not invoke MRE 403 while arguing this issue on appeal.

if there were a chance for reconciliation here, or reintroduction of the child the presence of [his father] could be pertinent to that issue . . . .

Mother then answered, "No, not at the time. Like right now my focus is bringing my boy home." Although this questioning concerned postpetition developments, it did not run afoul of the rule confining the inquiry to the time of the petition because the testimony pertained directly to concerns raised in the third amended petition about criminality in the home environment. See *In re MU*, 264 Mich at 279; *In re Dearmon*, 303 Mich App at 687-688.

Mother also argues that the trial court agreed to limit certain portions of her testimony relating to her improved financial situation. At trial, mother testified that she had been working at Applebee's and had recently gotten a better job at a different Applebee's location. Mother was invited to elaborate on her improved condition. She answered:

> [J]ust constantly improving on my person like making that move to Gaylord even though it may have been scary like I still did that to improve for me. I've worked on building my business throughout this year and it's just now starting to . . . pay off for me. I'm trying to purchase the property that . . . this business is licensed under. I . . . have had two vehicles the whole entire time. I have a 680 credit score from the bank. I'm approved for almost anything at this point and I'm gonna continue working on my credit. I just opened up a Home Depot credit card to make sure I keep building my credit.

Counsel for DHHS objected, acknowledging that "there is a jury instruction on . . . improved circumstances not being relevant," but stating that "I just don't know that that's relevant to the reason for jurisdiction." The trial court stated that, because "it is all testimony since the petition," it was not "relevant to the basis for the petition and defense of the petition[.]" The court elected not to strike mother's testimony from the record, but advised the parties to move on to a new line of questioning.

With her appellate objection, mother offers no analysis under *In re Dearmon*, 303 Mich App at 698, to show that continued testimony about her improved circumstances would have been admissible as evidence relating to a condition alleged in the petition that happened to be obtained after the petition was filed. She also fails to explain what additional information she would have provided if allowed to do so. Instead, mother implies, without citing any authority, that the court violated a duty to treat *all* evidence relating to postpetition developments as either admissible or not, and therefore render consistent blanket rulings on such matters. But, as noted, *In re Dearmon*, 303 Mich App at 698, calls for distinguishing "evidence of an event supporting jurisdiction that was not alleged in a petition and evidence obtained after the petition was filed." Thus, mother's observations regarding how the trial court limited her testimony regarding her improved situation have no bearing on the court's decision to allow testimony about the investigation of the father's alleged probation violations. Ultimately, mother has failed to show error requiring reversal.

Affirmed.

/s/ Allie Greenleaf Maldonado<br>
/s/ Michael J. Kelly<br>
/s/ Michelle M. Rick