*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

*In re* B. A. BRADLEY, Minor.

UNPUBLISHED
May 14, 2019

No. 345495
Wayne Circuit Court
Family Division
LC No. 15-520808-NA

Before: MURRAY, C.J., and JANSEN and RIORDAN, JJ.

PER CURIAM.

Respondent-mother appeals as of right the trial court's order terminating her parental rights to the minor child, BAB, pursuant to MCL 712A.19b(3)(g), (i), and (j). We affirm.

At the time of BAB's birth, respondent was receiving services pursuant to a treatment plan involving her four older children, who were then in the custody and care of the Michigan Department of Health and Human Services (the DHHS).[1] BAB, who was born testing positive for marijuana, opiates, and morphine initially administered by the hospital, was not initially brought before the court because he was released to Scott Scharboneau, who had executed an affidavit of parentage. However, after receiving a complaint that one of respondent's older children had been injured during a visit with respondent, Child Protective Services (CPS) attempted to verify BAB's whereabouts and was unable to locate him. After CPS discovered social media postings indicating that respondent was having unsupervised visits with BAB, he was located, and the DHHS filed a petition seeking temporary custody of BAB. It was thereafter determined that Scharboneau was not BAB's biological father, the DHHS filed an amended petition seeking permanent custody of BAB, and the affidavit of parentage was revoked. After an adjudication trial and best-interest hearing, the trial court found that BAB came within the court's jurisdiction pursuant to MCL 712A.2b(1) and (2), there was clear and convincing

---

[1] On February 1, 2018, the trial court terminated respondent's parental rights to the four older children. On December 20, 2018, this Court affirmed the trial court's order. See *In re Potter/Long, Minors*, unpublished per curiam opinion of the Court of Appeals, issued December 20, 2018 (Docket No. 342731). The older children are not the subject of this appeal.

evidence to terminate respondent's parental rights pursuant to MCL 712A.19b(3)(g), (i), and (j), and termination of respondent's parental rights was in BAB's best interests. This appeal followed.

## I. JURISDICTION

Respondent first argues that the trial court erred by exercising jurisdiction over BAB because he was released from the hospital at birth to his legal father, who provided proper care and custody. We disagree.

"We review the trial court's decision to exercise jurisdiction for clear error in light of the court's findings of fact." *In re BZ*, 264 Mich App 286, 295; 690 NW2d 505 (2004). "A finding of fact is clearly erroneous if the reviewing court has a definite and firm conviction that a mistake has been committed, giving due regard to the trial court's special opportunity to observe the witnesses." *Id*. at 296-297.

"To properly exercise jurisdiction, the trial court must find that a statutory basis for jurisdiction exists. Jurisdiction must be established by a preponderance of the evidence." *In re BZ*, 264 Mich App at 295 (citations omitted). During the adjudicative phase, in which jurisdiction is determined, the rules of evidence apply and legally admissible evidence is required. *In re AMAC*, 269 Mich App 533, 536-537; 711 NW2d 426 (2006). The trial court found that jurisdiction existed under MCL 712A.2(b)(1) and (2), the applicable versions of which provide:

> (b) Jurisdiction in proceedings concerning a juvenile under 18 years of age found within the county:

> (1) Whose parent or other person legally responsible for the care and maintenance of the juvenile, when able to do so, neglects or refuses to provide proper or necessary support, education, medical, surgical, or other care necessary for his or her health or morals, who is subject to a substantial risk of harm to his or her mental well-being, who is abandoned by his or her parents, guardian, or other custodian, or who is without proper custody or guardianship. As used in this sub-subdivision:

> (A) "Education" means learning based on an organized educational program that is appropriate, given the age, intelligence, ability, and psychological limitations of a juvenile, in the subject areas of reading, spelling, mathematics, science, history, civics, writing, and English grammar.

> (B) "Without proper custody or guardianship" does not mean a parent has placed the juvenile with another person who is legally responsible for the care and maintenance of the juvenile and who is able to and does provide the juvenile with proper care and maintenance.

(2) Whose home or environment, by reason of neglect, cruelty, drunkenness, criminality, or depravity on the part of a parent, guardian, nonparent adult, or other custodian, is an unfit place for the juvenile to live in.[2]

The doctrine of anticipatory neglect may apply to confer jurisdiction. *In re BZ*, 264 Mich App at 296. "The doctrine of anticipatory neglect recognizes that [h]ow a parent treats one child is certainly probative of how that parent may treat other children." *In re AH*, 245 Mich App 77, 84; 627 NW2d 33 (2001) (quotation marks and citation omitted).

In this case, the trial court found by a preponderance of the evidence that BAB came within MCL 712A.2(b)(1) and (2) because of the prior termination of respondent's parental rights due to her failure to comply with and benefit from her treatment plan, because of respondent's substance abuse and mental health issues, and because BAB was at substantial risk of harm due to respondent's neglect and being unfit. The trial court's findings are not clearly erroneous.

Christina Adamic, the CPS specialist assigned to the case, testified that there was a history of respondent not benefiting from any services and that respondent's rights to her four older children had been terminated. She also testified that BAB tested positive for marijuana, opiates, and morphine at birth. There was also testimony that respondent was asked to leave a recent visit with BAB because she was visibly intoxicated or under the influence of marijuana, and respondent admitted that she had smoked marijuana before the visit. There was also no evidence that respondent had obtained suitable and stable housing or employment, or was attending therapy for her post-traumatic stress disorder. Moreover, given respondent's history of inappropriate discipline, the doctrine of anticipatory neglect applied to confer jurisdiction. Adamic did not believe that respondent would be able to provide for the safety of BAB.

Respondent argues that BAB was not "without proper custody or guardianship" because, when he was released from the hospital at birth, he was placed with Scharboneau, who was his legal father based on the signing of an affidavit of parentage. MCL 712A.2(b)(1)(B) provides that " 'without proper custody or guardianship' does not mean a parent has placed the juvenile with another person who is legally responsible for the care and maintenance of the juvenile and who is able to and does provide the juvenile with proper care and maintenance." The trial court, however, exercised jurisdiction over the child *after* the affidavit of parentage was revoked and, therefore, BAB was without any other person who was legally responsible for his care and maintenance.

Respondent also argues that there was no admissible evidence that BAB was born with illegal substances in his system or that Scharboneau allowed her to have unsupervised visits with him. As noted, legally admissible evidence was required at the adjudication phase. *In re AMAC*,

---

[2] MCL 712A.2 was amended, effective June 12, 2018. See 2018 PA 58. Subdivisions (b)(1) and (2) were both amended to include that " 'neglect' means that term as defined in section 2 of the child abuse and neglect prevention act, 1982 PA 250, MCL 722.602."

269 Mich App at 536-537. Respondent suggests that Adamic's testimony that BAB was born with illegal substances in his system was based on hearsay. Respondent, however, did not object to Adamic's testimony below. Therefore, this argument is unpreserved and reviewed for plain error affecting respondent's substantial rights. See *In re VanDalen*, 293 Mich App 120, 135; 809 NW2d 412 (2011).

"Hearsay is 'a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted.' MRE 801(c). Hearsay is inadmissible unless the rules of evidence provide otherwise. MRE 802." *In re Utrera*, 281 Mich App 1, 18; 761 NW2d 253 (2008). Here, respondent has failed to establish that Adamic's testimony was hearsay because she did not testify regarding any out-of-court statement. She merely testified that BAB was "positive for marijuana, opiates, and morphine." Moreover, any error did not affect respondent's substantial rights. Respondent appears to argue that Adamic's testimony was improper because it was not "substantiated with meconium test results." Adamic's testimony, however, suggested that a test for drugs was performed at the hospital, even though the test results were not admitted at trial. Moreover, evidence that BAB was born with illegal substances in his system was not dispositive of the jurisdictional question. With regard to jurisdiction, the trial court did not expressly mention BAB testing positive for illegal substances at birth. Rather, it referred to respondent's substance abuse issue generally. Respondent's ongoing drug problem was also shown by her recent parenting time visit, during which she was asked to leave because she appeared to be under the influence of marijuana and she admitted that she had smoked marijuana before the visit. Even though respondent had a medical marijuana card, Jasmine Logan, the foster care supervisor assigned to BAB, was concerned with respondent using marijuana before a visit with BAB.

Respondent also argues that Jennifer Scharboneau's Facebook post was not legally admissible. Respondent objected below to the admission of a Facebook post made by Jennifer. She argued that it was hearsay, but the trial court ruled that respondent had confirmed her answers, "so it's admitted with regard to her answers." Jennifer's post asked whether respondent was going to "keep [BAB] for the night," and respondent testified that she responded, "Yes, I will." On appeal, respondent fails to argue why the evidence was not legally admissible. See *DeGeorge v Warheit*, 276 Mich App 587, 594-595; 741 NW2d 384 (2007) ("It is not enough for an appellant to simply announce a position or assert an error in his or her brief and then leave it up to this Court to discover and rationalize the basis for the claims, or unravel and elaborate the appellant's arguments, and then search for authority either to sustain or reject the appellant's position."). Nonetheless, even if the post and respondent's answer were not legally admissible, respondent has failed to establish that substantial justice requires reversal of the trial court's order. See *In re Utrera*, 281 Mich App at 21; MCR 2.613(A). As respondent acknowledges, the post was admitted to establish that she had unsupervised visits with BAB during the time that he had been placed with Scharboneau and respondent was supposed to have only supervised visits. However, the fact that respondent had unsupervised visits with BAB, or lied, was not determinative of the jurisdictional question. The trial court did not mention that fact in its findings regarding jurisdiction.

Accordingly, a preponderance of the evidence supports the trial court's exercise of jurisdiction under MCL 712A.2(b)(1) and (2), even without the evidence challenged by respondent on appeal. There was evidence that respondent failed to provide proper care and

custody and that her home was unfit by reason of neglect because she lacked suitable housing and stable employment, there was no evidence that she was treating her mental health issues, and she had a history of inappropriately disciplining her older children.

Finally, respondent argues that the trial court was unable to make a reliable determination that she could not benefit from services because it failed to provide the services that were recommended at the prior termination. In particular, respondent argues that the trial court should have provided her with anger management services, as suggested by the last foster care worker in the case regarding her older children. "However, the petitioner 'is not required to provide reunification services when termination of parental rights is the agency's goal.' " *In re Moss*, 301 Mich App 76, 91; 836 NW2d 182 (2013), quoting *In re HRC*, 286 Mich App 444, 463; 781 NW2d 105 (2009). Moreover, "the petitioner can request termination in the initial petition." *In re Moss*, 301 Mich App at 91. In this case, the DHHS sought termination in its amended petition and complied with the requirements of MCR 3.977(E); therefore, it was not required to provide reunification services to respondent. See *id*. at 91-92. Furthermore, the trial court's exercise of jurisdiction was not based on respondent's anger management issues. Respondent has failed to establish that substantial justice requires reversal of the trial court's order. See *In re Utrera*, 281 Mich App at 21; MCR 2.613(A).

## II. STATUTORY GROUNDS FOR TERMINATION

Respondent also argues that the trial court erred by finding that grounds for termination existed under MCL 712A.19b(3)(g) and (j). We disagree.

"To terminate parental rights, a trial court must find that at least one of the statutory grounds for termination in MCL 712A.19b(3) has been proved by clear and convincing evidence." *In re Brown/Kindle/Muhammad*, 305 Mich App 623, 635; 853 NW2d 459 (2014) (quotation marks and citation omitted). "This Court reviews for clear error the trial court's factual findings and ultimate determinations on the statutory grounds for termination. The trial court's factual findings are clearly erroneous if the evidence supports them, but we are definitely and firmly convinced that it made a mistake." *In re White*, 303 Mich App 701, 709-710; 846 NW2d 61 (2014) (citations omitted). "A reviewing court must defer to the special ability of the trial court to judge the credibility of witnesses." *In re LaFrance*, 306 Mich App 713, 723; 858 NW2d 143 (2014).

The trial court found that termination of respondent's parental rights was proper pursuant to MCL 712A.19b(3)(g), (i), and (j), the applicable versions of which provide:

> (g) The parent, without regard to intent, fails to provide proper care or custody for the child and there is no reasonable expectation that the parent will be able to provide proper care and custody within a reasonable time considering the child's age.

* * *

(i) Parental rights to 1 or more siblings of the child have been terminated due to serious and chronic neglect or physical or sexual abuse, and prior attempts to rehabilitate the parents have been unsuccessful.

(j) There is a reasonable likelihood, based on the conduct or capacity of the child's parent, that the child will be harmed if he or she is returned to the home of the parent.[3]

Because the DHHS sought termination of respondent's parental rights at the initial disposition in the amended petition, clear and convincing, legally admissible evidence was required under MCR 3.977(E). *In re Utrera*, 281 Mich App at 17-18.

Initially, we note that respondent has failed to challenge one of the statutory grounds found by the trial court. While the trial court only mentioned MCL 712A.19b(3)(g) and (j) on the record at the adjudication trial, it also listed MCL 712A.19b(3)(i) in the order of adjudication entered after the trial, in which it also discussed the statutory grounds for termination. "[A] court speaks through its written orders and judgments, not through its oral pronouncements." *In re KMN*, 309 Mich App 274, 287; 870 NW2d 75 (2015) (quotation marks and citation omitted). Therefore, MCL 712A.19b(3)(i) was one of the grounds relied upon by the trial court to terminate respondent's parental rights. Given that only one statutory ground must be established, *In re Powers*, 244 Mich App 111, 118; 624 NW2d 472 (2000), respondent's failure to challenge the trial court's reliance on MCL 712A.19b(3)(i) precludes appellate relief with respect to this issue. *In re JS & SM*, 231 Mich App 92, 98-99; 585 NW2d 326 (1998), overruled in part on other grounds by *In re Trejo*, 462 Mich 341; 612 NW2d 407 (2000). We may assume that the trial court did not clearly err by finding that MCL 712A.19b(3)(i) was established by clear and convincing evidence. See *In re JS & SM*, 231 Mich App at 98-99. Accordingly, we conclude that the trial court did not err in finding statutory grounds to support termination of respondent's parental rights.

### III. BEST-INTEREST DETERMINATION

Finally, respondent argues that the trial court erred by finding that termination of her parental rights was in the child's best interests. We disagree.

"The trial court must order the parent's rights terminated if [the DHHS] has established a statutory ground for termination by clear and convincing evidence and it finds from a

---

[3] MCL 712A.19b(3)(g) and (i) were amended by 2018 PA 58, effective June 12, 2018. Although the order terminating respondent's parental rights to the child was entered on June 12, 2018, the court's determination regarding the statutory grounds for termination was made on March 27, 2018. Therefore, we apply the preamendment versions of the statute. We note that the current version of MCL 712A.19b(3)(g) replaces "without regard to intent" with "although, in the court's discretion, financially able to do so[.]" Further, the current version of MCL 712A.19b(3)(i) replaces the second clause with "and the parent has failed to rectify the conditions that led to the prior termination of parental rights."

preponderance of the evidence on the whole record that termination is in the children's best interests." *In re White*, 303 Mich App at 713. "We review for clear error the trial court's determination regarding the children's best interests." *Id*.

In *In re White*, 303 Mich App at 713-714, this Court stated:

> The trial court should weigh all the evidence available to determine the children's best interests. To determine whether termination of parental rights is in a child's best interests, the court should consider a wide variety of factors that may include "the child's bond to the parent, the parent's parenting ability, the child's need for permanency, stability, and finality, and the advantages of a foster home over the parent's home." The trial court may also consider a parent's history of domestic violence, the parent's compliance with his or her case service plan, the parent's visitation history with the child, the children's well-being while in care, and the possibility of adoption. [Citations omitted.]

Based on our review of the record, we conclude that the trial court's findings relating to the best interests of BAB are not clearly erroneous. Siedah Spencer-Ardis, the foster care specialist assigned to BAB at the time of the best-interest hearing, testified that a preadoptive home had been identified for BAB, respondent missed three or four visits due to medical reasons and a work conflict, respondent had not presented any housing for assessment and said that she did not have suitable housing, and respondent was having trouble caring for herself. Respondent said that she was employed at Arby's, but the only proof that she provided was a work schedule and a pay stub with no name on it. Regardless, that was her fourth job in only a few months and she admitted that she had difficulty keeping jobs. Respondent had also failed to provide any documentation regarding the services she received at Lincoln Behavioral or her prescription medications. Respondent claimed she was being treated for several diagnoses and admitted that she had flashbacks during which she could also "hear what they're saying." The report regarding respondent's Clinic for Child Study evaluation further indicated that respondent's prognosis was poor, she was "extremely overwhelmed," and reunification may place BAB in potential danger. Although there was no specific testimony at the best-interest hearing regarding respondent's substance abuse issue, the report regarding respondent's Clinic for Child Study evaluation mentioned the child's drug exposure at birth. The testimony from the adjudication trial also supported this finding and the best-interest determination must be based on the whole record. *In re White*, 303 Mich App at 713.

Respondent argues that she was bonded with BAB who was not placed in a preadoptive home, she voluntarily provided information regarding her employment, and she should be given time to complete a treatment plan. With regard to the existence of a bond, although respondent and BAB seemed happy to see one another at visits, there was testimony that respondent would get overwhelmed and was unable to soothe her son. The report regarding respondent's Clinic for Child Study evaluation indicated that the bond was improving, but the interactions between respondent and BAB did not appear to be very affectionate or nurturing. Respondent herself merely testified that she *sometimes* feels a bond with BAB. Therefore, respondent's own testimony established that her bond with BAB was not very strong. Furthermore, while BAB was not yet placed in a preadoptive home, one had been identified for him. The fact that respondent voluntarily provided some information regarding her employment did little to

overcome the evidence that she never established stable employment or housing, she missed visits, she failed to provide evidence of treatment for her mental health issues, and she had ongoing substance abuse issues. Based on the foregoing, the trial court did not clearly err by finding that there was no reasonable expectation that respondent could address her issues and become a fit parent.

Affirmed.

/s/ Christopher M. Murray
/s/ Kathleen Jansen
/s/ Michael J. Riordan