*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

---

ROBERT DAVIS,

        Plaintiff-Appellant,

v

BOARD OF STATE CANVASSERS, SECRETARY OF STATE, THIRD JUDICIAL CIRCUIT COURT OF MICHIGAN, THIRD JUDICIAL CIRCUIT CHIEF JUDGE, and JUDGE BRIAN R. SULLIVAN,

        Defendants-Appellees.

UNPUBLISHED
October 19, 2023

No. 363828
Court of Claims
LC No. 22-000163-MM

---

ROBERT DAVIS,

        Plaintiff-Appellant,

v

WAYNE CIRCUIT COURT, WAYNE CIRCUIT COURT CHIEF JUDGE, and STATE COURT ADMINISTRATOR,

        Defendants-Appellees,

and

STATE COURT ADMINISTRATIVE OFFICE,

        Defendant.

No. 364061
Court of Claims
LC No. 22-000121-MM

---

Before: CAVANAGH, P.J., and RIORDAN and PATEL, JJ.

PER CURIAM.

-1-

Plaintiff, Robert Davis, appeals by right the order of the Court of Claims granting summary disposition in favor of all defendants in these consolidated cases pursuant to MCR 2.116(C)(8) and MCR 2.116(I). Most of the issues in these consolidated cases arise out of an underlying lawsuit plaintiff filed in Wayne Circuit Court generally challenging the candidacy of several individuals for the position of Wayne County Circuit Judge for the November 2022 general election. Relevant to the issues plaintiff pursues on appeal,[1] plaintiff sought: to prevent votes for those individuals from being counted; to hold the Wayne Circuit Court itself, and several of its judges, in contempt of an order of disqualification entered by another judge of the Wayne Circuit Court; and a declaratory judgment that the Wayne Circuit Court and its Chief Judge violated the law by providing staff counsel for two of the challenged individuals who were at the time incumbent judges. We conclude that the first claim is moot, the second claim is unavailable because the Court of Claims correctly recognized that it lacked the power to hold a person in contempt of another court's order, and the last claim is partially moot and partially unavailable because plaintiff lacks standing. Therefore, we affirm.

## I. FACTS AND PROCEDURE

Plaintiff's underlying lawsuit in Wayne County ("Case 8866") was the subject of his appeal in *Davis v Wayne Co Election Comm*, unpublished per curiam opinion of the Court of Appeals, issued July 20, 2023 (Docket No. 363604) (*Davis II*). Plaintiff sought to prevent certain candidates for the position of Wayne Circuit Court[2] judge from appearing on the November 2022 ballot, for reasons not important to this appeal. *Davis II*, unpub op at 2. In due course, plaintiff's claims were dismissed, *id*., unpub op at 4, and this Court affirmed, *id*., unpub op at 14. That was not the only lawsuit in which plaintiff sought essentially the same relief as to some combination of the same and other candidates; in all of his lawsuits, he ultimately did not prevail. *Davis v Secretary of State*, ___ Mich App ___, ___; ___ NW2d ___ (2023) (Docket No. 362841) (*Davis I*); slip op at 7, 12; see also *Davis v Wayne Co*, unpublished per curiam opinion of the Court of Appeals, issued April 13, 2023 (Docket No. 364133). In the meantime, the November 2022 election has taken place. See *Davis I*, ___ Mich App at ___; slip op at 7.

Relevant to this appeal, during the pendency of Case 8866, plaintiff made several motions to disqualify, as set forth in *Davis II*, unpub op at 3-4:

Davis's case was initially assigned to Wayne Circuit Court Chief Judge Timothy M. Kenny. Chief Judge Kenny signed a show-cause order scheduling the

---

[1] Plaintiff conceded below that his claims against the State Court Administrative Office became moot, and, although the State Court Administrator is named as an appellee in this matter, any claim plaintiff had against it would therefore also be moot. In any event, plaintiff does not pursue claims against either the State Court Administrative Office or the State Court Administrator on appeal. Plaintiff asserted a claim below seeking to hold 2022 PA 195 unconstitutional, but he has also not pursued that claim on appeal. Those claims are abandoned. See *Slater v Ann Arbor Pub Schs Bd of Ed*, 250 Mich App 419, 422 n 1; 648 NW2d 205 (2002). We will not address them further.

[2] The Wayne Circuit Court is the more common name for the Third Judicial Circuit Court of Michigan. For convenience, we will refer to the Wayne Circuit Court.

matter for hearing on August 4, 2022. On July 29, 2022, Davis filed an emergency motion to disqualify Chief Judge Kenny and the entire Wayne Circuit Court judiciary because of their relationships with the two incumbent defendants, Fresard and Ramsey. Chief Judge Kenny denied Davis's disqualification motion on August 8, 2022. On August 11, 2022, the State Court Administrative Office (SCAO) assigned the motion to Wayne Circuit Court Judge Freddie G. Burton, Jr., for review, but Judge Burton disqualified himself sua sponte based on his role as chairman of the WCEC. Subsequently, the SCAO assigned the motion to Macomb Circuit Court Judge James M. Biernat, Jr., for de novo review. Judge Biernat granted the motion for disqualification as to Chief Judge Kenny only. But he declined to address the issue with respect to the other Wayne Circuit Court judges because Davis withdrew his request for such relief at oral argument.

On September 9, 2022, Wayne Circuit Court Judge Susan L. Hubbard disqualified herself sua sponte. Judge Hubbard declared that a judicial ethics opinion prohibited the assignment of any Wayne Circuit Court judge to Davis's case and thus indicated that the case should be reassigned by the SCAO. On September 12, 2022, Judge Hubbard entered an opinion and order explaining her reasoning in further detail. Thereafter, on September 13, 2022, Wayne Circuit Court Judge Brian R. Sullivan entered an order transferring the case from Chief Judge Kenny to Wayne Circuit Court Judge Qiana D. Lillard, citing Judge Biernat's disqualification order as the reason for the reassignment.[3]

\* \* \*

On September 22, 2022, Davis moved to disqualify Judge Lillard. Judge Lillard denied the motion on October 4, 2022. Pursuant to Davis's request, Judge Lillard immediately referred the disqualification motion to the SCAO for de novo review by another judge of the SCAO's choosing. But Davis withdrew his request on October 6, 2022, stating he believed "that based upon the representations Judge Lillard made on the record during the October 4, 2022 hearing, Judge Lillard can be fair and impartial in adjudicating the merits of this case." Accordingly, Judge Lillard presided over the balance of the proceedings.

---

[3] On September 14, 2022, plaintiff filed with this Court a complaint for writ of superintending control, alleging that Wayne Circuit Court, and Chief Judge Kenny in particular, were failing to enforce Judge Hubbard's September 12, 2022 opinion and order requiring that the case be referred to the SCAO for assignment to a judge outside of the Wayne Circuit Court. This Court dismissed the complaint. *In re Robert T Davis*, unpublished order of the Court of Appeals, entered September 15, 2022 (Docket No. 362987). In doing so, it "presume[d]" that the more recent September 13, 2022 order entered by Judge Sullivan was controlling over Judge Hubbard's earlier orders on the subject. *Id*. Plaintiff's subsequent application for leave to appeal was denied "for failure to persuade the court of the need for

immediate appellate review." *Davis v Wayne Co Election Comm*, unpublished order of the Court of Appeals, entered September 20, 2022 (Docket No. 363010).

---

Of further relevance to this appeal, attorney Julie M. Dale, who identified herself as Associate General Counsel for the Wayne Circuit Court, filed an appearance in Case 8866 on behalf of incumbent defendants Kelly Ann Ramsey and Patricia Susan Fresard.

In relevant part, in Docket No. 364061, plaintiff sued the Wayne Circuit Court and then-Chief Judge Kenny, seeking declaratory and injunctive relief on the basis that they could not legally permit a staff attorney of the Wayne Circuit Court's Office of General Counsel to represent Fresard and Ramsey in Case 8866 because Fresard and Ramsey were allegedly sued in their individual rather than official capacities. The Court of Claims ultimately rejected this argument, holding that MCL 691.1408(1) and (3) permitted trial courts to furnish attorneys for their judges and imposed no preclusion against such representation for judges in their individual capacities. The Court of Claims declined to search for any other source of law that might prohibit such representation, noting that plaintiff had failed to cite any such alternative authority.

In Docket No. 363828, plaintiff sued the Board of State Canvassers, seeking to preclude any votes cast for his challenged candidates from being certified or counted; and plaintiff sued the Secretary of State, seeking to require the Secretary of State to inform voters and election officials that the challenged candidates would not be certified or counted. The Court of Claims rejected plaintiff's claims regarding the counting of votes for the candidates, noting that it had previously refused to bar the candidates from appearing on the ballot pursuant to the doctrine of laches [which this Court affirmed in *Davis I*], and plaintiff failed to show that the candidates lacked the constitutional qualifications to hold the office of circuit court judge. Plaintiff also sought to hold the Wayne Circuit Court, Judge Kenny, and Judge Sullivan in civil and criminal contempt of Judge Hubbard's September 9 and September 12, 2022 orders. The Court of Claims rejected this claim on the grounds that: it lacked the power to hold another court or its judges in contempt for actions taken within the scope of their authority; the proper remedy, if any, would have been superintending control; and it also lacked the power to impose superintending control over a circuit court.

## II.  STANDARD OF REVIEW

A grant or denial of summary disposition is reviewed de novo. *McMaster v DTE Energy Co*, 509 Mich 423, 431; 984 NW2d 91 (2022). A motion for summary disposition under MCR 2.116(C)(8) tests the legal sufficiency of a claim, and it must be decided on the pleadings alone, accepting all factual allegations as true. *El-Khalil v Oakwood Healthcare, Inc*, 504 Mich 152, 159-160; 934 NW2d 665 (2019). "A motion under MCR 2.116(C)(8) may only be granted when a claim is so clearly unenforceable that no factual development could possibly justify recovery." *Id.* at 160.

The interpretation and application of statutes, rules, and legal doctrines is reviewed de novo. *Estes v Titus*, 481 Mich 573, 578-579; 751 NW2d 493 (2008). The interpretation of common-law doctrines is reviewed de novo. *Kandil-Elsayed v F & E Oil, Inc*, ___ Mich ___, ___;

-4-

___ NW2d ___ (2023) (Docket Nos. 162907 and 163430); slip op at 7. "Whether due process has been afforded is a constitutional issue that is reviewed de novo." *Elba Twp v Gratiot Co Drain Comm'r*, 493 Mich 265, 277; 831 NW2d 204 (2013). Mootness is a question of law that is considered de novo and as a threshold issue that must be addressed before any substantive issues in a case. *Can IV Packard Square, LLC v Packard Square, LLC*, 328 Mich App 656, 661; 939 NW2d 454 (2019). "Whether a party has standing is a question of law that is reviewed de novo." *Mich Ass'n of Home Builders v City of Troy*, 504 Mich 203, 212; 934 NW2d 713 (2019).

## III.  DUE PROCESS

On appeal, plaintiff argues that he was deprived of due process because the Court of Claims dismissed his cases sua sponte without giving him reasonable notice or a meaningful opportunity to be heard. We disagree.

Due process of law requires, at a minimum, that a party deprived of some interest must be given timely notice and a meaningful opportunity to be heard. *Bonner v City of Brighton*, 495 Mich 209, 235; 848 NW2d 380 (2014). "Although a trial court may sua sponte grant summary disposition under MCR 2.116(I), the trial court may not do so in contravention of a party's due-process rights." *Sandstone Creek Solar, LLC v Twp of Benton*, 335 Mich App 683, 712; 967 NW2d 890 (2021). "[A] grant of summary disposition does not violate due process so long as the nonmoving party is given sufficient notice and an opportunity to be heard." *Law Offices of Jeffrey Sherbow PC v Feiger & Feiger PC*, ___ Mich App ___, ___; ___ NW2d ___ (2023) (Docket Nos. 360582 & 361567); slip op at 9. A trial court may violate a party's due-process rights by raising an issue sua sponte and then granting summary disposition on that basis. *Zelasko v Charter Twp of Bloomfield*, ___ Mich App ___, ___; ___ NW2d ___ (2023) (Docket No. 359002); slip op at 5-6. However, a party's due-process rights may be adequately protected by posthearing procedures. See *Georgetown Place Co-Op v City of Taylor*, 226 Mich App 33, 52-53; 572 NW2d 232 (1997). Erroneous deprivations of due process can be cured by de novo review. *Spranger v City of Warren*, 308 Mich App 477, 484-485; 865 NW2d 52 (2014).

There is no dispute that the Court of Claims issued its opinion and order sua sponte dismissing the case only a day after some of the defendants filed a motion to dismiss, so plaintiff had no meaningful opportunity to respond to that motion. However, plaintiff asserts that there are no factual disputes, and we observe that plaintiff's pleadings are highly detailed and go far beyond the requirements of notice pleading. A review of plaintiff's pleadings, motions, and other filings reveals that he had a pattern of reiterating his original positions, so it appears clear that he had a *substantively* meaningful opportunity to present his positions to the Court of Claims. The Court of Claims did not grant summary disposition on the basis of an *issue* that it raised sua sponte. Cf. *Zelasko*, ___ Mich App at ___; slip op at 5-6. The Court of Claims analyzed the substance of plaintiff's arguments, and it obviously read plaintiff's pleadings notwithstanding his assertion that some of them were filed under the wrong case number. Plaintiff also had a pattern of filing "emergency ex parte" motions for various forms of relief—in other words, essentially asking for relief without giving defendants an opportunity to respond.

In any case, we recognize that due process requires that a party receive a meaningful opportunity to present their case *before* any permanent deprivation of the party's interest occurs. *Bonner*, 495 Mich at 238-239. Time is generally of the essence in election cases. See, e.g.,

*Gleason v Kincaid*, 323 Mich App 308, 316; 917 NW2d 685 (2018). Election cases, therefore, would seem to be particularly subject to the maxim that "justice delayed is justice denied." See *Mich Consol Gas Co v Mich Public Serv Comm*, 389 Mich 624, 637; 209 NW2d 210 (1973). Posthearing review might mean little if an election occurred in the meantime. Here, however, the Court of Claims did not enter its opinion and order until three days after the November 2022 election had taken place. Furthermore, plaintiff sought the relief of halting the counting of votes in Case 8866, and Judge Lillard had already ruled that plaintiff was not entitled to that relief two weeks previously. In other words, any issues that would be rendered moot as a consequence of the time considerations inherent in election cases were already moot by the time the Court of Claims entered its opinion and order. Therefore, any delay in reviewing the Court of Claims' opinion and order would not further deprive plaintiff of any justice.

For the above reasons, we conclude that plaintiff was not substantively deprived of a meaningful opportunity to be heard, nor was he deprived of notice of the arguments and issues that the Court of Claims considered and decided. The Court of Claims did not deprive plaintiff of due process.

Plaintiff also argues that the Court of Claims erred because it failed to accept the well-pleaded factual allegations in his complaints as true. We disagree. Plaintiff fails to appreciate the distinction between alleging facts and alleging conclusions. See *Masrur v Regents of Univ of Mich*, ___ Mich App ___, ___; ___ NW2d ___ (2022) (Docket No. 356858); slip op at 3. For example, plaintiff alleged that Judge Kenny permitted Dale to appear on behalf of Fresard and Ramsey at a hearing held on August 5, 2022, which is a factual statement. Plaintiff also alleged that some defendants violated MCL 691.1408(1) and (3), which would be a conclusion of law. See *Estes*, 481 Mich at 578-579 (interpretation and application of statutes, court rules, and legal doctrines is a question of law). Plaintiff alleged that Judge Hubbard entered two orders of disqualification on September 9 and September 12, 2022, which is a factual statement. Plaintiff also alleged that some defendants "were obligated to obey Judge Hubbard's September 9th and 12th, 2022 orders, which were validly and lawfully entered," which would be a conclusion of law. *Silberstein v Pro-Golf of America, Inc*, 278 Mich App 446, 460; 750 NW2d 615 (2008) (interpretation of a court order is a question of law). Some of plaintiff's allegations are his personal opinions, such as whether Dale was rude to him.

The Court of Claims would only have been obligated to accept as true the factual portions of plaintiff's allegations. See *Masrur*, ___ Mich App at ___; slip op at 3. In general, the legal significance of a fact is a question of law. *Phillips v Mirac, Inc*, 470 Mich 415, 428; 685 NW2d 174 (2004). The courts are not bound by parties' statements or stipulations of law. *Kimmelman v Heather Downs Mgt Ltd*, 278 Mich App 569, 576; 753 NW2d 265 (2008). It is not clear to us what, if any, specific factual allegations plaintiff believes the Court of Claims disregarded. Nothing in the Court of Claims' opinion and order suggests that it failed to accept as true the factual allegations in plaintiff's complaints, and it is the courts' responsibility to draw their own independent conclusions of law. The Court of Claims did not err.

## IV.  MOOTNESS

Plaintiff advanced a number of claims generally seeking, on one theory or another, the ultimate goal of preventing his challenged candidates from serving as Wayne Circuit Court judges. We conclude that those claims are moot.

"The courts will generally refrain from deciding issues that are moot, meaning it is impossible for the court to craft an order with any practical effect on the issue." *Moore v Genesee Co*, 337 Mich App 723, 726-727; 976 NW2d 921 (2021).  As noted, the November 2022 election has taken place, and plaintiff's challenged candidates were elected and have been seated.  It is therefore impossible for any court to enter an order preventing votes for those candidates from being counted.  Nevertheless, the courts may entertain a moot issue if the issue is a matter of public significance, is likely to recur, and will likely evade judicial review.  *League of Women Voters of Mich v Secretary of State*, 506 Mich 561, 582-583 n 26; 957 NW2d 731 (2020).  "[L]egal questions affecting election ballots, such as AOI requirements, are the classic example of an issue that the courts will nevertheless review as matters of public significance that are likely to recur yet evade judicial review." *Davis I*, ___ Mich at ___; slip op at 8-9; see also *Davis II*, unpub op at 4-5.  Here, however, plaintiff has received judicial review of his claims that the candidates should not have been placed on the ballot, elected, or seated.  That judicial review did not favor plaintiff's position, but because it actually took place, those claims have not evaded judicial review.

Therefore, the exception to the general rule against deciding moot issues has no applicability here, and we decline to revisit a question we have already decided.  Plaintiff's claims against the Board of State Canvassers and the Secretary of State were properly dismissed.

## V.  CONTEMPT

Plaintiff argues that the Court of Claims erred by failing to realize that it had the power to hold defendants in contempt of Judge Hubbard's orders and by failing to do so.  We disagree.

A party is not obligated to obey an order that is void.  *Matter of Hague*, 412 Mich 532, 544-545; 315 NW2d 524 (1982).  However, a party is obligated to obey a court order that is merely incorrect.  *In re Contempt of Dudzinski*, 257 Mich App 96, 110-112; 667 NW2d 68 (2003).  "A party must obey an order entered by a court with proper jurisdiction, even if the order is clearly incorrect, or the party must face the risk of being held in contempt and possibly being ordered to comply with the order at a later date." *Kirby v Mich High Sch Athletic Ass'n*, 459 Mich 23, 40; 585 NW2d 290 (1998).  In *Davis II*, we determined that Judge Hubbard's orders were unauthorized because there was never any valid order in the record of Case 8866 that actually assigned the matter to Judge Hubbard.  *Davis II*, unpub op at 7-9.[3]  Judge Hubbard's unauthorized orders were therefore required to be set aside and were subject to sua sponte reversal on appeal.  See *Schell v*

---

[3] Because *Davis II* is unpublished, we are not bound to follow it, but we choose to adopt its holding in relevant part as persuasive.  See *Centria Home Rehab, LLC v Philadelphia Indemnity Ins Co*, ___ Mich App ___, ___; ___ NW2d ___ (2023) (Docket No. 359372); slip op at 8.

*Baker Furniture Co*, 461 Mich 502, 515; 607 NW2d 358 (2000); *Tingley v Kortz*, 262 Mich App 583, 588-589; 688 NW2d 291 (2004).

However, a lack of authority is not the same as a lack of jurisdiction. *People v Washington*, 508 Mich 107, 124; 972 NW2d 767 (2021). Even severe procedural errors do not deprive a court of subject-matter jurisdiction or render an order void. See *Foster v Foster*, 509 Mich 109, 124-126; 983 NW2d 373 (2022), amended on other grounds 509 Mich 988 (2022); *Jackson City Bank & Trust Co v Fredrick*, 271 Mich 538, 545-546; 260 NW 908 (1935). At the time the Court of Claims dismissed these consolidated cases, *Davis II* had not yet been decided, so Judge Hubbard's orders had not yet been set aside. Therefore, Judge Hubbard's orders were not "void" such that they need not have been obeyed.

Nevertheless, that does not confer the power to enforce those orders on any *other* court. Although contempt proceedings may be held before a judge other than the original judge, "the matter is one for the sound discretion of the judge handling the original proceeding." *Cross Co v United Auto, Aircraft, & Agricultural Implement Workers of America, Local 155*, 377 Mich 202, 212; 139 NW2d 694 (1966). And, in this case, that would be Judge Hubbard. See *In re Contempt of Henry*, 282 Mich App 656, 675; 765 NW2d 44 (2009); *DeGeorge v Warheit*, 276 Mich App 587, 598-600; 741 NW2d 384 (2007).

Plaintiff is correct that Michigan courts have both inherent common-law contempt powers and statutory contempt powers that they may use to preserve the effectiveness and power of the courts against acts or omissions that impede the functionality of the courts. *In re Contempt of Auto Club Ins Ass'n*, 243 Mich App 697, 707-710; 624 NW2d 443 (2000), superseded in part by statute on other grounds as described in *Porter v Porter*, 285 Mich App 450, 458-459; 776 NW2d 377 (2009). However, that contempt power is generally understood to be the power of a particular court to sanction or curb impairments of only that court's own authority. See *Bessette v WB Conkey Co*, 194 US 324, 330; 24 S Ct 665; 48 L Ed 997 (1904) ("At common law it was undoubted that no court reviewed the proceedings of another court in contempt matters."); *People v Kurz*, 35 Mich App 643, 656; 192 NW2d 594 (1971) (the source of courts' contempt powers "is the duty of the court to preserve its own effectiveness, to sustain its power"); *In the Matter of David Robinson*, 1 Blume Sup Ct Trans 331; 1808 WL 1663 (1808) ("While the Supreme Court has power to punish, in a summary way, contempts of its own authority, it has no power to punish in a similar manner contempts of another tribunal or authority."). Such an understanding would be consistent with the principle that contempt proceedings should at least initially be handled by the original judge. *Cross Co*, 337 Mich at 212. Even criminal contempts are not true penal proceedings, but rather are proceedings for "the limited purpose of vindicating the authority of the court." *DeGeorge*, 276 Mich App at 598-599.

MCL 600.1701 *et seq*. is a codification of the common-law contempt power. See *In re Contempt of Dougherty*, 429 Mich 81, 96; 413 NW2d 392 (1987). Nowhere in MCL 600.1701 is there any clear indication that the Legislature intended to permit courts generally to hold any person in contempt of *another* court. Indeed, its language suggests the opposite. Notably, MCL 600.1731 states that in "proceedings for contempt arising out of the publication of any news, information, or comment concerning a court of record, except the supreme court, or any judge of that court the defendant has the right to have the proceedings heard by the judge of another court of record." In other words, the Legislature provided one circumstance under which contempt

proceedings may be heard by a different court, but even there, the right to a hearing in a different court belongs to the defendant. Pursuant to "the doctrine of expressio unius est exclusio alterius," meaning "the expression of one thing suggests the exclusion of all others," *Pittsfield Charter Twp v Washtenaw Co*, 468 Mich. 702, 712; 664 NW2d 193 (2003), the fact that the Legislature explicitly provided a single situation in which contempt proceedings may be heard before a different court strongly suggests that contempt proceedings may not otherwise be held before a different court.

We therefore conclude that the Court of Claims correctly recognized that it did not have the power to hold any of the defendants in contempt of an order, or of orders, entered by another court. And, thus, it properly declined to hold any defendant in contempt of Judge Hubbard's orders or to order any defendant to comply with Judge Hubbard's orders.[4]

## VI. STANDING

We decline to address plaintiff's challenges to the provision of Dale's services under MCL 691.1408, because plaintiff's claim is moot as to Dale's specific representation of Fresard and Ramsey, and plaintiff has no standing to bring a general challenge to the legality of courts providing attorneys for their judges.

"[S]tanding refers to the right of a party plaintiff *initially* to invoke the power of the court to adjudicate a claimed injury in fact." *Saugatuck Dunes Coastal Alliance v Saugatuck Twp*, 509 Mich 561, 592; 983 NW2d 798 (2022) (quotation marks and citation omitted). The question is whether a particular person is a proper party to seek adjudication of an issue, not necessarily whether the issue is justiciable. *T&V Assoc, Inc v Dir of Health & Human Servs*, ___ Mich App ___, ___; ___ NW2d ___ (2023) (Docket No. 361727); slip op at 7. "[A] litigant has standing whenever there is a legal cause of action." *Lansing Sch Ed Ass'n Lansing Bd of Ed*, 487 Mich 349, 372; 792 NW2d 686 (2010). A party has standing to seek a declaratory judgment pursuant to MCR 2.605 if there is "an actual controversy," meaning "a declaratory judgment is needed to guide a party's future conduct in order to preserve that party's legal rights." *League of Women Voters*, 506 Mich at 586. No injury need yet have occurred, but the controversy must be more than anticipated or hypothetical. *Id*. The bar for standing is lowered in cases concerning election laws, but even in election cases, a party may not bring a declaratory-judgment action regarding any "law that might affect his or her interests in the future" or because "they only want instruction going forward." *Id*. at 587-588. A party lacks standing if there was never an actual controversy, whereas a case will become moot if an actual controversy no longer exists. *T&V Assoc, Inc*, ___ Mich App at ___; slip op at 7.

To the extent plaintiff sought to remove Dale as counsel of record for Fresard and Ramsey in Case 8866, Dale withdrew from that representation, so no court can craft an order requiring her

---

[4] We need not address plaintiff's arguments regarding any statements by the Court of Claims to the effect that superintending control was an appropriate remedy. The Court of Claims did not affirmatively hold that plaintiff could or should have pursued such a claim, and, in any event, the Court of Claims was clearly correct that, pursuant to MCR 3.302(D)(1), it lacked the structural power to exercise superintending control over a circuit court.

-9-

to do so. See *Moore*, 337 Mich App at 726-727. Any such request is now moot. *T&V Assoc, Inc*, ___ Mich App at ___; slip op at 7. We presume, but we do not decide, that plaintiff's request for a declaratory judgment might constitute a matter of public significance that is likely to recur but evade judicial review. *League of Women Voter*, 506 Mich at 582-583 n 26. Nevertheless, although this is nominally an election case, plaintiff is seeking declaratory judgment specifically regarding the implications of MCL 691.1408, which is part of the governmental tort liability act (GTLA), MCL 691.1401 *et seq*. Therefore, the lowered bar for standing that usually attaches to election cases has no applicability to this issue, because this issue has nothing to do with elections and only came up in an election case by happenstance.

Plaintiff has not explained how his rights could have been affected by who was paying for Fresard's and Ramsey's attorney.[5] Therefore, there was no "actual controversy" regarding the provision of counsel to Fresard and Ramsey that would have entitled plaintiff to bring a declaratory-judgment action regarding MCL 691.1408. Plaintiff identifies no authority establishing that he can enforce an alleged violation of MCL 691.1408, see *Miller*, 481 Mich at 606-609, nor does he explain how any such alleged illegality affects his own rights or conduct, see *League of Women Voters*, 506 Mich at 586. Plaintiff seeks only general guidance, which would not be sufficient to confer standing even in an election case. *Id*. at 587-588. Therefore, plaintiff lacks standing to seek a declaratory judgment regarding the legality in general of courts providing counsel for their judges in light of MCL 691.1408.

Affirmed.

/s/ Mark J. Cavanagh
/s/ Michael J. Riordan
/s/ Sima G. Patel

---

[5] We recognize that in Case 8866 plaintiff argued that Dale's representation constituted an actual conflict of interest because she represented Judge Kenny in this matter while also representing Fresard and Ramsey in Case 8866. That allegation might arguably have given rise to an actual controversy at the time, but for reasons unrelated to MCL 691.1408.